## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

DAVID DEITZEL                          :
                                       :
          Plaintiff,                   :
                                       :
v.                                     :        CIVIL ACTION
                                       :
SPRINGFIELD TERMINAL RAILWAY           :        NO. 03-12560-RGS
COMPANY                                :
                                       :
          Defendant.                   :

## PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Plaintiff, David Deitzel, respectfully requests this Honorable Court deny the Summary Judgment Motion filed by Defendant, Springfield Terminal Railway Company ("Defendant"). Plaintiff has brought an action pursuant to the Federal Employers' Liability Act ("FELA"), 45 U.S.C.S. §§51 et seq. Plaintiff states that in response to the Motion filed by Defendant, material issues of fact exist, requiring a denial of Defendant's Motion.

Plaintiff's response to Defendant's Statement of the Case in its Brief is as follows:

1. Denied. Plaintiff's Complaint speaks for itself.

2. Denied. Plaintiff's Complaint and deposition testimony speaks for itself.

3. Denied. Plaintiff's deposition testimony speaks for itself.

4. Denied. Plaintiff's deposition testimony speaks for itself. By way of further answer, a 2-3 foot snow storm fell a day or two before the accident date, and snow had to be removed from the walk area of the conductor, from the area on both sides around the switch point, and around the switch stand. Deposition of David Deitzel, February 23, 2005, attached as Exhibit

"A"[1], p. 68-69; Deposition of P.J. Collins, December 2, 2005, attached as Exhibit "B"[2], p. 11-12.

5.      Denied. Plaintiff's deposition testimony speaks for itself.

6.      Denied. Plaintiff's deposition testimony speaks for itself.

7.      Denied. Plaintiff's deposition testimony speaks for itself.

8.      Denied. Plaintiff's deposition testimony speaks for itself. By way of further answer, the switch had snow all around it, and as the handle of the switch came up as Plaintiff attempted to throw it, thin ice shattered. Exhibit "A", p.74; Exhibit "B", p.21-22.

9.      Denied. Plaintiff's deposition testimony speaks for itself.

10.     Admitted.

11.     Admitted in part, denied in part. It is admitted that Plaintiff alleges in his Complaint that he was injured because the aforesaid switch malfunctioned, was defective and was improperly and/or poorly maintained.    It is denied, however, as to any suggestion that this is the complete allegation of the Plaintiff. By way of further answer, Plaintiff alleges that he was injured as a result of the defective and hazardous condition of the switch.

12.     Denied. Plaintiff's answer to Defendant's Interrogatory #4 speaks for itself. By way of further answer, Plaintiff alleges in his answer to Defendant's Interrogatory #5 that the switch was in a defective and/or dangerous condition which had been a problem prior to the accident and contributed to his injuries; and that P.J. Collins knew the switch was the problem prior

---

[1]As opposed to Defendant's Motion for Summary Judgment, Plaintiff has attached to his Response the entire transcript of the deposition testimony of David Deitzel and P.J. Collins for the court's review.

[2] See footnote number 1.

to the accident. See Defendant's Interrogatories to Plaintiff attached as Exhibit "C"[3]; see Plaintiff's Answers to Defendant's Interrogatories attached as Exhibit "D".

13. Denied. Plaintiff's deposition testimony speaks for itself. By way of further answer, Plaintiff testified that when he threw the switch, his thought at the time was that the switch didn't function properly because there was ice on the switch. Exhibit "A", P.73. In addition, P.J. Collins testified that he observed Plaintiff attempt to throw the switch, and that after the switch handle came up, thin ice shattered, and that the presence of ice would hold the switch closed. Exhibit "B", p.19-20.

14. Denied. Plaintiff is without knowledge, information or belief as to the truth of the matter asserted in paragraph 14 of Defendant's Statement of the Case.

## PLAINTIFF'S CONTESTED ISSUES OF FACT

1. A day or two prior to March 12, 2001, an approximately 2-3 foot snowstorm occurred in the Nashua, New Hampshire area. Exhibit "A", p.68.

2. On the morning of March 12, 2001 at 9:00 a.m., snow was present on the walk area of the conductor, both sides of the switch point, and around the switch stand. Exhibit "B", p.11-12.

3. On March 12, 2001 at approximately 12:15 p.m., Plaintiff was attempting to throw the Track No. 1 switch in Defendant's Nashua Yard when, except for the handle, the switch did not move, causing him pain in his left shoulder and arm. Exhibit "A", p.55,64,75; Exhibit "B", p.19-21, Defendant's Exhibit "D", paragraph 5.

4. When the handle came up, thin ice shattered, and ice was observed on the switch plates, switch blank plates and railroad ties. Exhibit "B", p.21-22.

5. The presence of this ice would affect the function of the switch by holding it closed. Exhibit

[3]As opposed to Defendant's Motion for Summary Judgment, Plaintiff has included not only Plaintiff's Answer to Defendant's Interrogatories, but also the Interrogatories themselves.

"B", p.22.

6.    It is the responsibility of Defendant's Track Department to inspect the condition of the switch prior to it being thrown. Exhibit "B", p.24.

7.    The Track Department would remove ice from switches by putting salt down and using bars and picks to clean it out, and a snow jet to blow the ice out. Exhibit "B", p.25.

8.    From approximately 9:00 a.m. to the time that Plaintiff tried to throw the switch, no one from the Track Department removed ice from the switch. Exhibit "B", p.25.

9.    Prior to March 12, 2001, the switch that Plaintiff was attempting to throw was causing trouble with being out of alignment, preventing it from begin thrown from one direction to another. Exhibit "B", p.29.

10.   Within six months of the accident, and on three separate occasions, engineer P.J. Collins informed the Track Department of the problems with the switch. Exhibit"B", p.29-31.

11.   No repairs were made to the switch within six months prior to March 12, 2001. Exhibit "B", p.31.

## FACTS

This is an action arising out of an incident which occurred in Defendant's Nashua, New Hampshire Rail Yard. On or about March 12, 2001, Plaintiff was employed by the Defendant railroad as a conductor. Defendant's Exhibit "A". The job of a freight conductor included throwing switches, which gets a train from one track to another track in the train yard. Exhibit "B", p.9-10. On that date, Plaintiff reported to work at the Nashua Yard at approximately 9:00 a.m., two hours later then the usual start time of 7:00 a.m., due to the weather conditions that day. Exhibit "A", p.49-51. A day or two before March 12, 2001, the Nashua area was beset by a 2-3 foot snowstorm, and the day of the accident, snow was present on the walk area of the conductor, both sides of the switch

point, and around the switch stand. Exhibit "A", p.68; Exhibit "B", p.11-12. At approximately 12:15 to 12:20 p.m., Plaintiff was attempting to throw the Track No. 1 switch when, except for the handle, the switch did not move, causing him to suffer pain in his left shoulder and arm. Exhibit "A", p.55, 64, 75 and Exhibit "B", p.19-21; Defendant's Exhibit "D", paragraph 5.

When the handle of the switch came up, thin ice shattered, and ice was observed on the switch plates, switch blank plates and railroad ties. Exhibit "B", p. 21-22. The presence of this ice would effect the function of the switch by holding it closed. Exhibit "B", p.22. It was the responsibility of Defendant's Track Department to inspect the switch prior to it being thrown. Exhibit "B", p.24. The Track Department would remove ice from switches by putting salt down and using bars and picks to clean it out, and a snow jet to blow the ice out. Exhibit "B", p.25. From approximately 9:00 a.m., when the Plaintiff and his engineer, P.J. Collins, reported to work at Nashua Yard, to the time the Plaintiff tried to throw the switch, no one from the Track Department removed ice from the switch. Exhibit "B", p. 25.

Prior to March 12, 2001, the switch that Plaintiff was attempting to throw was causing trouble with being out of alignment, preventing it from being thrown from one direction to another. Exhibit "B", p.29. Within six months of the accident, and on three separate occasions, Defendant's engineer P.J. Collins informed the Track Department of the problems with the switch. Exhibit "B", p.29-31. Despite this information, no repairs were made to the switch within six months prior to March 12, 2001. Exhibit "B", p.31.

On December 19, 2003, Plaintiff instituted this action in the United States District Court, District of Massachusetts pursuant to the Federal Employers' Liability Act ("FELA") 45 U.S.C.S.§§ 51 et seq. for personal injuries sustained in the course and scope of his employment with Defendant. In his complaint, Plaintiff alleged, inter alia, that he was injured while attempting to throw a switch in Defendant's Nashua, New Hampshire Yard, and that he was injured because the aforementioned

switch malfunctioned, was in a defective and hazardous condition, and/or improperly and/or poorly maintained. Defendant's Exhibit "A", paragraphs 7-9. On or about November 14, 2005, Defendant filed a Motion for Summary Judgment contending, inter alia, that the Plaintiff failed to produce any evidence that the switch was defective, and that the Plaintiff failed to demonstrate that the Defendant had any actual or constructive notice of an alleged defective condition.

## ARGUMENT

### 1. Summary Judgment Standard

Summary judgment's role in civil litigation is "to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." Garside v. Osco Drug, Inc., 895 F.2d 46, 47 (1st Cir. 1990). Summary judgment is appropriate only when "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). At the summary judgment stage, there is "no room for credibility determinations, no room for the measured weighing of conflicting evidence such as the trial process entails, no room for the judge to superimpose his own ideas of probability and likelihood." Greenburg v. Puerto Rico Maritime Shipping Authority, 835 F.2d 932, 936 (1st Cir. 1987). In determining whether summary judgment is appropriate, the Court must "look at the record in the light most favorable to the party opposing the motion." Poller v. Columbia Broadcasting System, 368 U.S. 464, 473 (1962); Hahn v. Sargent, 523 F.2d 461, 464 (1st Cir. 1975), cert. denied, 425 U.S. 904, 47 L. Ed. 2d 754, 96 S. Ct. 1495 (1976). Similarly, the Court must "indulge all inferences favorable to the party opposing the motion" for summary judgment. Hahn, 523 F.2d at 464; Horibin v. Providence & Worcester R.R., 352 F. Supp. 2d 116, 2005 U.S. Dist. LEXIS 287 (D. Mass. 2005). Among other things, the nonmoving party is entitled "to have the credibility of his evidence as forecast assumed, his version of all that is in dispute accepted, [and] all internal conflicts in [the evidence] resolved favorably to

him...." Greenburg, 835 F.2d 932 citing Charbonnages de France v. Smith, 597 F.2d 406, 414 (4th Cir. 1979). It can only be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there are no genuine issues as to any material fact and the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56. See also Wheelock v. R.I., 2002 U.S. Dist. LEXIS 8630 (D.R.I. Apr. 8, 2002).

In order to sustain a summary judgment motion, the movant must put the ball in play, averring "an absence of evidence to support the nonmoving party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 325, 91 L. Ed. 2d 265, 106 S. Ct. 2548 (1986). The burden then shifts to the nonmovant to establish the existence of at least one fact issue which is both "material" and "genuine." See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 91 L. Ed. 2d 202, 106 S. Ct. 2505 (1986); Garside, 895 F.2d 46; Brennan v. Hendrigan, 888 F.2d 189, 191 (1st Cir. 1989); Finn v. Consolidated Rail Corp., 782 F.2d 13, 15 (1st Cir. 1986); Hahn, 523 F.2d at 464. "In this regard, 'material' means that a contested fact has the potential to change the outcome of the suit under the governing law if the dispute over it is resolved favorably to the nonmovant. By like token, 'genuine' means that 'the evidence about the fact is such that a reasonable jury could resolve the point in favor of the nonmoving party.'" Navarro v. Pfizer Corp., 261 F.3d 90, 93-94 (1st Cir. 2001) (quoting McCarthy v. Northwest Airlines, Inc., 56 F.3d 313, 315 (1st Cir. 1995)).

Here, plaintiff brought suit against Springfield under the FELA. Recognizing the "special need" to protect railroaders from the inherently dangerous nature of their work, Sinkler v. Missouri Pac. R.R. Co., 356 U.S. 326, 329 (1958), Congress enacted the statute to "shift part of the human overhead of doing  business" from the employees to their employers. Consolidated Rail Corp. v. Gottshall, 512 U.S. 532, 542, 114 S. Ct. 2396, 129 L. Ed. 2d 427 (1994). The Act strips employers of their common law defenses of assumption of the risk and contributory negligence as a bar to recovery, Rogers v. Missouri Pac. R.R., 352 U.S. 500, 506 (1957), and abandons general concepts

of proximate cause. Green v. River Term. Ry., 585 F. Supp. 1019, 1024 (N.D.Ohio 1984), aff'd, 763 F.2d 805 (6th Cir. 1985).

The standard for submitting an FELA case to the jury is also much less stringent than in the ordinary negligence action. Rogers, 352 U.S. at 506; Mendoza v. Southern Pac. Trans. Co., 733 F.2d 631, 633 (9th Cir. 1984). The "test of a jury case is simply whether the proofs justify with reason the conclusion that employer negligence played any part, *even the slightest*, in producing the injury." Rogers, 352 U.S. at 506 (emphasis added).

> It does not matter that, from the evidence, the jury may also with reason, on grounds of probability, attribute the result to other causes, including the employee's contributory negligence. Judicial appraisal of the proofs to determine whether a jury question is presented is narrowly limited to the single inquiry whether, with reason, the conclusion may be drawn that negligence of the employer played any part at all in the injury...Judges are to fix their sights primarily to make that appraisal and, if that test is met, are bound to find that a case for the jury is made out whether or not the evidence allows the jury a choice of other probabilities.

Id. at 507. Given the low evidentiary threshold for submission to the jury in an FELA case, the federal courts have "liberally construed" the FELA to allow employee recovery. Gottshall, 512 U.S. at 543; Robert v. Consolidated Rail Corp., 832 F.2d 3, 6 (1st Cir. 1987). Accordingly, a "case must not be dismissed at the summary judgment phase unless there is absolutely no reasonable basis for a jury to find for the plaintiff." Syverson v. Consolidated Rail Corp., 19 F.3d 824, 828 (2d Cir. 1994).[4] As such, only "slight" or "minimal" evidence of negligence is needed to raise a jury question in a FELA action.[5]   This is because the right to a jury trial is "part and parcel of the remedy

---

[4]See also Pehowic v. Erie Lackawanna R.R., 430 F.2d 697, 699-700 (3d Cir. 1970) (court may only withdraw a FELA case from the jury "in the extremely rare instance" where there is "zero probability" of negligence); Allen v. Seacoast Products, Inc., 623 F.2d 355, 360 (5th Cir. 1980) (directed verdict may be granted only if "there is a complete absence of probative facts" suggesting employer negligence).

[5]See Armstrong v. Burlington N. R.R., 139 F.3d 1277 (9th Cir. 1998); Mullahon v. Union Pac. R.R., 64 F.3d 1358, 1363-64 (9th Cir. 1995); Pierce v. Southern Pac. Trans. Co., 823 F.2d 1366, 1370 (9th Cir. 1987); Mendoza v. Southern Pacific Transp. Co., 733 F.2d 631, 632 (9th Cir. 1984);

afforded" under the FELA.  Bailey v. Central Vermont R.R. Co., 319 U.S. 350, 354, 87 L. Ed. 1444, 63 S. Ct. 1062 (1943); New York, N. H. & H. R. Co. v. Zermani, 200 F.2d 240 (1st Cir. 1952).[6]  And the power of a jury to "pass upon" issues of fault and causation "must be most liberally viewed."  Johannessen v. Gulf Trading & Trans. Co., 633 F.2d 653, 656 (2d Cir. 1980);  O'Connell v. Nat'l R.R. Pass. Corp., 922 F.2d 1039, 1042 (2d Cir. 1991)(citing Eggert v. Norfolk & Western Ry., 538 F.2d 509, 511 (2d Cir. 1976)) (a jury's role "is significantly greater in FELA cases than in common law negligence actions").

### 2.  Plaintiff's Allegation that His Injury Was Caused by the Defective Condition of the Switch Is Based on the Evidence and Not Conjecture or Speculation.

Despite Defendant's assertion to the contrary, there was sufficient evidence for a factfinder to conclude that there was an accumulation of ice on the switch. In an FELA case, liability may be inferred completely from circumstantial evidence. See Rogers, 352 U.S. at 508; Mendoza, 733 F.2d at 633; Barboza, 434 F.2d at 123; Pehowic, 430 F.2d at 699; Moore v. Chesapeake & Ohio Ry., 493 F. Supp. 1252, 1265 (S.W.Va. 1980), aff'd, 649 F.2d 1004 (4th Cir. 1981).  Indeed, it may be based exclusively on "facts and circumstances which, in light of ordinary experience, reasonably suggest that [the] defendant's negligence produced the injury." Van Holt v. Nat'l R.R. Pass. Corp., 283 62, 68, 669 N.E.2d 1288, 1293 (1996), cert. denied, _ U.S. _, 117 S.Ct. 1694, 137 L.Ed.2d 820 (1997).

---

Ybarra v. Burlington Northern, Inc., 689 F.2d 147, 149 (8th Cir. 1982); Burns v. Penn Cen. Co., 519 F.2d 512, 514 (2d Cir. 1975); Boeing Co. v. Shipman, 411 F.2d 365, 370-73 (5th Cir. 1969). See also Harbin v. Burlington Northern R.R., 921 F.2d 129, 131 (7th Cir. 1990) (court embraced more relaxed "scintilla of evidence" rule); 5A J. Moore & J. Lucas, Moore's Federal Practice § 0.02[1] (2d ed. 1982) (courts have adopted a standard similar to "scintilla rule" in FELA cases).

[6]See Atlantic & Gulf Stevedores, Inc. v. Ellerman Lines, Ltd., 369 U.S. 355, 360 (1962); O'Connell v. Nat'l R.R. Pass. Corp., 922 F.2d 1039, 1042 (2d Cir. 1991); Johannessen v. Gulf Trading & Trans. Co., 633 F.2d 653, 656 (2d Cir. 1980). See also Norris v. Burlington N. Santa Fe, 2003 U.S. Dist. LEXIS 5592 (N.D. Ill. 2003) ("FELA is generally a pro-plaintiff statute, and the plaintiff's right to a jury determination is part and parcel of the liberal remedy afforded the working person under the FELA").

And the jury in an FELA case possesses particularly "broad powers" to "engage in inferences." <u>Mendoza</u>, 733 F.2d at 633; <u>Barboza v. Texaco, Inc.</u>, 434 F.2d 121 (1st Cir. 1970). A verdict is not "one of speculation and conjecture [simply] because inferences are arrived at by the application of general experience and common reaction to the evidentiary situation." <u>Henwood v. Coburn</u>, 165 F.2d 418, 423 (8th Cir. 1948).

> Whenever facts are in dispute or the evidence is such that fair-minded men may draw different inferences, a measure of speculation and conjecture is required on the part of those whose duty it is to settle the dispute by choosing what seems to them to be the most reasonable inference.

<u>Lavender v. Turn</u>, 327 U.S. 645, 653 (1946).

The courts, therefore, have liberally applied <u>Rogers</u>' standard in favor of FELA plaintiffs. In <u>Harris v. Pennsylvania R.R.</u>, 361 U.S. 15 (1959), the plaintiff slipped on a cross-tie while engaged in refracting two derailed boxcars. He instituted an FELA case and, at trial, alleged he was injured because the cross-tie was covered with either grease or oil and was elevated a substantial distance above ground level. Both negligence claims were submitted to the jury, and the Supreme Court, in a <u>per curium</u> ruling citing <u>Rogers</u>, held there was sufficient evidence to support the jury's finding of employer liability. The only evidence that there was any grease on the cross-tie, however, was Harris's testimony on cross-examination that he had seen some grease on the sole of his right shoe after he fell. <u>See Harris v. Pennsylvania R.R.</u>, 168 Ohio St. 582, 584, 156 N.E.2d 822, 824 (1959). A foreman had also testified that the railroad periodically lubricated its switches. 361 U.S. at 26. Yet, Harris had never stated in his accident report, at his deposition, or on direct examination that he "encountered grease at any stage of the operation." 361 U.S. at 26-27 (Harlan, J., dissenting). Nor had he ever testified "he had seen grease anywhere in the vicinity, still less on the particular cross-tie where his foot had rested." <u>Id</u>. In fact, Harris only observed mud on the tie in question. 156 N.E.2d at 824. As the court of appeals noted, however, there was sufficient evidence to create a jury

question as there was grease on the shoe of the foot Harris had planted on the tie and none on the one

he had placed on the ground. Harris v. Pennsylvania R.R., 108 Ohio App. 541, 545-46, 146 N.E.2d

744, 747 (1957).

> The jury may well have reasoned that grease would have been found on both shoes
> had grease been present on the ground other than on the tie and that since the plaintiff
> saw it only on the shoe that had been on the tie, the jury could have inferred that it
> came from the tie. This testimony, considered with the obvious fact that a foot
> slipping on a surface gives such a person some feeling as to whether the slipping is
> due to mud or grease or oil...would justify a jury finding that there was grease or oil
> on the tie. After all, the jury saw and heard the witness and was in a position to
> determine the credit and the weight to be given his testimony. Moreover, they had
> the right to draw fair and reasonable inferences from the testimony in the light of all
> surrounding circumstances. This was their function under the law, and, to hold...that
> there was insufficient evidence to support the findings of fact would, in our opinion,
> be tantamount to denying this plaintiff the right to have his complaint passed upon
> by a jury, a clear right accorded him under the [FELA].

146 N.E.2d at 747.

A similar result was obtained in Taluzek v. Illinois Cen. Gulf R.R., 225 Ill.App.3d 72, 626

N.E.2d 1367 (1993). Taluzek sustained personal injuries in the process of restarting a locomotive

engine. He had just walked down the catwalk, opened the engine compartment doors, and turned

on the starter switch when his right leg "slipped out from under him." 626 N.E.2d at 1371. Taluzek

instituted an FELA action alleging that he fell because the defendant permitted oil or grease to

accumulate on the catwalk. Taluzek, however, never saw what he had slipped on. Id. He could only

remember that it "felt like either grease or oil." Id. Nor did he testify that he noticed anything unusual

on the catwalk or submit any evidence that there were traces of oil on his shoes. Id. A co-worker did

observe a pool of oil or "some other substance" dripping from the catwalk outside the engine

compartment after the accident. Id. Yet, even he did not observe any footprints in the oil. Id.

Nonetheless, the court of appeals, reviewing the propriety of the denial of Taluzek's motion for judg-

ment notwithstanding the verdict, held that the evidence created a "substantial factual dispute." Id.

[P]laintiff in the present case bore the burden of proving that there was something

- 12 -

> unsafe or defective on the locomotive which caused his fall. The evidence presented
> established that no one, not even plaintiff to a great extent, witnessed the actual fall.
> Thus, the jury had to weigh the testimony and assess witness credibility in order to
> determine what occurred...[I]t was up to the jury to decide whether plaintiff stepped
> in the oil, causing the fall.

Id. at 1373.

In Howard v. Missouri Pac. R.R., 295 S.W.2d 68 (Mo. 1956), the court similarly recognized the light evidentiary burden of a FELA plaintiff. At trial, Howard alleged he was injured when he tripped over a piece of debris on a concrete runway adjacent to defendant's tracks. Though he did not know what caused his fall, he testified that the object "felt like" a "bolt" or a "pin." Id. at. 71. He had experienced a "rolling" sensation under the ball of his foot before the accident and had also heard the "clink of metal." Id. Yet, not a single witness, not even Howard himself, stated they had seen a bolt or pin at the time of the incident. Id. at 72.[7] There was, however, some testimony that the railroad's employees were constantly walking over the runway with tools and car parts. Id. The court insisted that Howard had submitted sufficient evidence to create a triable issue of employer negligence under the FELA.

> It is the position of defendant-respondent that the facts [sic] that plaintiff could not
> testify of [sic] having seen and visually identified the object over which he fell and
> that no other witness saw or discovered the bolt or pin when or after plaintiff fell are
> fatal to plaintiff's case...[W]e believe we should not go so far as to say as a matter of
> law that plaintiff's identification of the round object over which he fell as being a bolt
> or pin, such as used in repairing cars, by the exercise of his sense of touch in feeling
> the object roll under his foot and by hearing the metallic 'click' of metal on concrete
> was insufficient and unsubstantial in tending to show the object over which he fell
> was a bolt or pin.

_____

[7]The plaintiff alleged that it must have "kick[ed] toward the tracks" after the accident. Id. at 71.

Id. at 72.[8]

In Barboza v. Texaco, Inc., 434 F.2d 121 (1st Cir. 1970), a First Circuit Jones Act case, an employee slipped on squash while descending a stairway. Squash was found on his foot and on the stairway. After a jury found in favor of the employee, the employer appealed, arguing that there was no basis, other than speculation, for determining how the squash got onto the employee's foot. The court denied the petition, holding the evidence warranted the jury in finding it more probable than not that it was not the employee who brought the squash onto the stairs. The court held once the jury had inferred the squash was tracked onto the stairs by another member of the crew, it was reasonable then to infer negligence. Texaco attempted to claim that the more plausible explanation for the presence of the squash was that it was tracked in by the plaintiff himself. The First Circuit disagreed:

It does not matter that, from the evidence, the jury may also with reason, on grounds of probability, attribute the result to other causes," including plaintiff's own negligence. 352 U.S. at 506, 77 S. Ct. at 448. This language is consistent with that of an earlier case, Lavender v. Turn, 1946, 327 U.S. 645, 653, 66 S. Ct. 740, 744, 90 L. Ed. 916 where the Court said, "Only when there is a complete absence of probative facts to support the conclusion reached does a reversible error appear. Where, as here, there is an evidentiary basis for the jury's verdict, the jury is free to discard or disbelieve whatever facts are inconsistent with its conclusion." By this language the Court has evidently rejected any test as strict as appellant's more-probable-than-not standard for limiting jury inferences. In these cases, and in later ones resting on their authority, cited post, the Court has allowed jury inferences as to both the cause of an accident and as to the presence of negligence, on the basis of evidence which reasonably supports the inferences but does not make them more probable than not.

As in the aforementioned case, Plaintiff's testimony that he saw snow all around the switch,

---

[8]See also Norfolk & Western Ry. v. Hughes, 247 Va. 113, 115, 439 S.E.2d 411, 412, cert. denied, 511 U.S. 1128 (1994) (plaintiff tripped, turned, and "only thing" he saw was split cross-tie "sticking up"); Wiser v. Missouri Pac. R.R. Co., 301 S.W.2d 37, 39 (Mo. 1957) (plaintiff's foot "rolled, "gave way," and he looked at ground and saw rock); Buffo v. Baltimore & Ohio R.R., 364 Pa. 437, 439, 72 A.2d 593, 594 (1950)(plaintiff thought he "slip[ped] on...rivet heads or pieces of bolts" and these were lying around yard).

and that it was his determination at the time of the accident that the switch didn't function properly because there was ice on the switch establishes sufficient circumstantial evidence to conclude that there was snow around or ice on the switch which prevented it from being thrown. In addition, unlike the aforementioned cases, an eyewitness, Mr. Collins, offered testimony which not only corroborated Plaintiff's testimony but also presented additional evidence of a defective condition. Mr. Collins observed the Plaintiff trying to throw the switch, and saw only the handle of the switch move. He indicated that when the handle came up, thin ice shattered, and he observed ice on the switch plates, switch blank plates and railroad ties. He further stated that the presence of this ice would effect the function of the switch by holding it closed. Clearly, there is sufficient circumstantial evidence to create a jury question as to the presence of ice which prevented the switch from operating properly and caused injury to the Plaintiff.

Furthermore, Mr. Collins testified that within six months of the date of accident, the switch that Plaintiff was attempting to throw was out of alignment, preventing it from being thrown from one direction to another, and despite notifying the Track Department of this problem, no repairs were made. Based on this testimony, Plaintiff submits that there is sufficient circumstantial evidence to create a jury question as to the existence of a misalignment which prevented the switch from properly operating and caused injury to the Plaintiff.

Defendant's reliance on <u>Carlew v. Burlington Northern Railroad Company</u>, 514 So. 2d 899 (Ala.1987) is inapposite to the present case. In <u>Carlew</u>, the only evidence regarding the condition of the switch was the testimony of a witness who did not see the accident, but to whom the plaintiff complained of pain. The witnesses's assumption that "the switch could not be thrown, it must have been frozen" was deemed insufficient to establish a defective condition. However, in the case <u>sub judice</u>, there is evidence of the presence of ice on the switch, and the defect presented by said condition. Moreover, there is evidence that, prior to the accident, the switch had been misaligned,

and the defect presented by this condition. Thus, the evidence indicates that a genuine issue of material fact exists as to whether the ice on and/or the misalignment of the switch was a defective condition which caused the Plaintiff injury.

3. Defendant had Actual and/or Constructive Notice of the Defective Condition of the Switch

The FELA establishes a duty on the part of a common carrier to use reasonable care in providing employees a safe work environment. See Bailey v. Central Vermont R.R. Co., 319 U.S. 350, 352, 87 L. Ed. 1444, 63 S. Ct. 1062 (1943); Adams v. CSX Transp., Inc., 899 F.2d 536, 539 (6th Cir. 1990). Ensuring that employees have proper equipment with which to perform their work assignments falls within this duty. See Rodriguez v. Delray Connecting Ry., 473 F.2d 819, 821 (6th Cir. 1973). Moreover, a common carrier must take reasonable precautions, including inspections of its property and equipment, to protect its employees from potential harm. Cazad v. Chesapeake & Ohio Ry., Co., 622 F.2d 72, 75 (4th Cir. 1980); see also Shenker v. Baltimore & Ohio Ry. Co., 374 U.S. 1, 10, 10 L. Ed. 2d 709, 83 S. Ct. 1667 (1963). If an employer learns or should learn of a potential hazard, it must take reasonable steps to investigate and to inform and protect its employees, or it will be liable when injury occurs. See Mohn v. Marla Marie, Inc., 625 F.2d 900, 902 (9th Cir. 1980).

The catalyst which ignites this duty is knowledge, either actual or constructive. See Schilling v. Delaware & H. R. Corp., 114 F.2d 69, 71 (2d Cir. 1940). In order to prevail on a claim of defective equipment, a plaintiff must demonstrate that the defendant had actual or constructive notice of the defect or that the injury was reasonably foreseeable to the defendant. See, e.g., Baynum v. Chesapeake & Ohio Ry. Co., 456 F.2d 658, 660 (6th Cir. 1972); Adams, 899 F.2d at 539. The test of foreseeability, however, "does not require that the negligent person should have been able to foresee the injury in the precise form in which it in fact occurred. Rather it is sufficient if the

- 16 -

negligent person might reasonably have foreseen that an injury might occur." <u>Green v. River Terminal Ry.</u>, 763 F.2d 805, 808 (6th Cir. 1985); see also <u>Gallick v. Baltimore & O.R.R.</u>, 372 U.S. 108, 120, 9 L. Ed. 2d 618, 83 S. Ct. 659 (1963); <u>Syverson</u>, 19 F.3d at 827; <u>McCracken v. Richmond, Fredericksburg & Potomac R.R.</u>, 240 F.2d 484, 487 (4th Cir. 1957) ("the particular and exact manner of the accident need not be foreseen").[9] Indeed, under the FELA, a railroad is liable for all unexpectedly severe or even unlikely consequences of its wrongdoing. <u>Gallick</u>, 372 U.S. 108. Importantly, though, "notice" and "forseeability," present issues of fact, and "as with all factual issues under FELA, the right of the jury to pass on [them] must be liberally construed." <u>Gallose v. Long Island R.R. Co.</u>, 878 F.2d 80, 85 (2d Cir. 1989).

In the instant matter, the Defendant relies solely on the affidavit of Larry Ferguson, its Director of Train Operations, to demonstrate the lack of notice of any defect in the track switch. In his affidavit, Mr. Ferguson indicates that he examined the Record of Movement of Trains and Track Cars train sheets dated March 5, 2001 through and including March 19, 2001, and that there was no mention on the train sheets of this switch involved in the Plaintiff's claim except on the train sheet

---

[9]In <u>Gallick</u>, for example, the railroad had permitted to exist a fetid pool of water that had attracted a variety of vermin and insects. An employee bitten by an insect in the vicinity of this pool suffered a reaction so severe as to require the amputation of his leg. "Reasonable foreseeability" was an issue because there was no evidence that the insect at issue was hatched from the stagnant pool or was attracted there by it, and because the medical consequence was highly unusual. The trial court awarded damages, but the state appeals court reversed, finding an insufficient causal connection to permit a jury verdict. The United States Supreme Court reversed and remanded, holding that since the railroad "knew that the accumulation of the pool of water would attract bugs and vermin to the area--it is clear that the jury concluded that respondent should have realized the increased likelihood of an insect's biting petitioner while he was working in the vicinity of the pool." <u>Gallick</u>, 372 U.S. at 118-119. The plaintiff was therefore not required to specifically demonstrate that the untended condition could be expected to result in so terrible a harm. Indeed, the <u>Gallick</u> Court held that:

> ...for a defendant to be liable for consequential damages he need not foresee the particular consequences of his negligent acts: assuming the existence of a threshold tort against the person, then whatever damages flow from it are recoverable.

<u>Gallick</u>, 372 U.S. at 121.

dated March 12, 2001 where it is noted "1224-NA-1 CNDR (conductor) Deitzel pulled a muscle in back or shoulder throwing (sic) switch in Nashua YD S/E Lead Switch to 4 + 3." Federal Rules of Civil Procedure 56(e) provides that sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith. However, Mr. Ferguson did not provide, as required by the rule, copies of the train sheets referenced in his affidavit. Affidavits which do not have attached thereto copies of papers referred to therein do not comply with the rule and cannot be relied upon in ruling on a Motion for Summary Judgment. Peterson v. United States of America, 694 F.2d 943 (CA3 N.J. 1982); Gordon v. Watson, 622 F.2d 120 (5th Cir. 1980); Maiorana v. McDonald, 596 F.2d 1072 (1st Cir. 1979); Washington Post Co. v. Keogh, 125 U.S. App. D.C. 32, 365 F.2d 965 (1966); cert. denied 385 U.S. 101, 17 L.Ed. 2d 548, 87 S.Ct. 708 (1967). Thus, given Mr. Ferguson's noncompliance with Rule 56, his affidavit should not be considered in ruling on Defendant's Motion.

Even assuming arguendo that Mr. Ferguson's affidavit has complied with the requirements of Rule 56, the affidavit fails to establish that there is no genuine issue of material fact as to whether Defendant had actual or constructive notice of the defective condition of the switch. There is no representation in the affidavit that problems with switches are noted exclusively on train sheets. In addition, Mr. Ferguson only looked at train sheets covering the period one week before and one week after the Plaintiff's accident; P.J. Collins testified that within six months of the accident, he complained to the Track Department on three occasions that the subject switch was problematic. Moreover, while the affidavit indicates that any crew members that encountered a problem of any type and nature with the switch were required and expected to report it to the dispatcher, it does not address the responsibility of the Track Department, whom Mr. Collins identified as being responsible for the maintenance and inspection of the switch, and to whom he complained about the misalignment. In sum, as to the issue of notice, the affidavit fails to establish that there is no genuine

- 18 -

issue of material fact.

Rather, the evidence clearly establishes that the Defendant had actual and/or constructive notice of the aforementioned defective conditions. P.J. Collins testified that it was the responsibility of the Defendant's Track Department to inspect and maintain the switch, including the removal of ice and snow from the switch. In addition, Mr. Collins described the method by which the Track Department would remove ice from the switch. Further, Mr. Collins described the general weather conditions the morning of the accident (snow present on the walk area of the conductor, both sides of the switch point, and around the switch stand; ice observed on the switch plate, switch blank plates, and railroad ties). Moreover, Mr. Collins indicated that between the time he arrived at work (9:00 a.m.) and the time the Plaintiff was injured (12:15-12:30 p.m.), the Track Department did not attempt to remove ice from the switch. All of the aforementioned evidence creates a genuine issue of material fact as to whether Defendant should have known about the presence of ice and failed to take remedial measures. Similarly, as to the problems created by the misalignment of the switch, Mr. Collins testified that he notified the Track Department three times within the six month period prior to the accident that the switch was misaligned, described the problems caused by such misalignment, and the failure of the Defendant failed to take any remedial measures until after the Plaintiff's accident. Clearly, this evidence establishes a genuine issue of material fact as to both actual and constructive notice of the misalignment, and its resultant problems.

### 4. Conclusion

For the foregoing reasons, Plaintiff respectfully requests that the Defendant's Motion for Summary Judgment be denied.

BARISH ◆ ROSENTHAL

BY: _____
Rudolph V. De George, II
Attorney for Plaintiff, David Deitzel

- 19 -

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing

Plaintiff's Response to Defendant's Motion for Summary Judgment was served by United

States First Class Mail, Postage Prepaid, upon:

John J. O'Brien, Esquire
O'BRIEN & VON ROSENVINGE, P.C.
27 Mica Lane, Suite 202
Wellesley, MA 02481

on this _____15_____ day of _____December_____, 2005.

BARISH ◆ ROSENTHAL

BY: _____
Rudolph V. De George, II
Attorney for Plaintiff

IN THE UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

DAVID DEITZEL                              :
                                           :
            Plaintiff,                     :
                                           :
v.                                         :        CIVIL ACTION
                                           :
SPRINGFIELD TERMINAL RAILWAY               :        NO. 03-12560-RGS
COMPANY                                    :
                                           :
            Defendant.                     :

## ORDER

AND NOW, this        day of              , 2005, upon consideration of Defendant,

Springfield Terminal Railway Company's, Motion for Summary Judgment, and any response thereto,

it is Ordered that the Motion is hereby DENIED.


                                    _____
                                                                J.