IN THE UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

DAVID DEITZEL

       Plaintiff,

v.                                          CIVIL ACTION

SPRINGFIELD TERMINAL RAILWAY    NO. 03-12560-RGS
COMPANY

       Defendant.

**PLAINTIFF'S, DAVID DEITZEL'S RESPONSE TO DEFENDANT, SPRINGFIELD TERMINAL RAILWAY COMPANY'S MOTION FOR JUDGMENT NOTWITHSTANDING THE VERDICT PURSUANT TO F.R.C.P. 50, OR IN THE ALTERNATIVE, MOTION FOR NEW TRIAL PURSUANT TO F.R.C.P. 59**

**I.    FACTS AND PROCEDURAL HISTORY**

On October 3, 2006, the above-captioned case was tried before this court and a jury. On October 5, 2006, the jury returned a verdict in favor of plaintiff and against defendant in the amount of $925,960.00. Specifically, the jury found that the defendant, Springfield Terminal Railway Company ("STR") was negligent in maintaining the switch at its Nashua, New Hampshire Yard on March 12, 2001; that such negligence played a part in causing injuries to plaintiff; that the plaintiff was contributorily negligent; that his negligence played a part in causing his injuries; and that STR was 70% negligent, and the plaintiff 30% negligent. Document 33. On October 13, 2006, STR filed a Motion for Judgment Notwithstanding the Verdict pursuant to F.R.C.P. 50, or in the alternative, a Motion for New Trial pursuant to F.R.C.P. 59. Specifically, STR alleges that there was insufficient evidence presented at trial from which a reasonable jury could determine, by a preponderance of the evidence, that the subject track switch was defective and/or that STR was on notice of any defective

condition involving the rail switch during the relevant period.

The evidence adduced at trial indicated that on March 12, 2001, plaintiff, who was employed by STR as a conductor, was attempting to throw a switch in the Nashua, New Hampshire Yard when the switch, after moving approximately three inches, ceased to move any further, causing the plaintiff to suffer injuries to his neck, left shoulder and left arm. The plaintiff was not regularly assigned to the Nashua Yard, but worked there on the date of accident at the request of STR. On that date, the plaintiff was part of a two man crew with an engineer, P.J. Collins, who was regularly assigned to the Nashua Yard. The plaintiff had been throwing switches since he began his employment at STR in 1987, and indicated that when throwing a switch, the switch should move in a smooth and continuous motion. However, on the date of the accident, the switch abruptly stopped its movement. The plaintiff reported the condition of the switch and his injury to the train dispatcher, who noted on the train sheet for March 12, 2001 that "... CNDR Deitzel pulled a muscle in back or shoulder throughing (sic) switch in Nashua YD. S/E Lead Switch to 4 + 3". Trial Exhibit 3 attached as Exhibit "A".

According to Larry Ferguson, STR's Director of Operations who, as part of his job responsibilities, interprets notations on train sheets, the entry in the March 12, 2001 train sheet indicated that there was a defect in the switch, and that an injury occurred.

Within six months of the date of the accident, the switch that plaintiff was attempting to throw was observed out of alignment, which would prevent it from being thrown from one direction to another. Testimony of P.J. Collins, Trial Exhibit 2, page 29-31, attached as Exhibit "B". However, despite Mr. Collins notifying the Track Department of the problems with the switch on three (3) different occasions within those six months, no repairs were ever made. Id., p.31. After the accident, Mr. Collins informed Plaintiff of the aforementioned problems with the switch.

## II. STANDARD OF REVIEW

In a case arising under the FELA, a court may set aside a jury verdict and enter judgment n.o.v. under F.R.C.P. 50 "only when there is a complete absence of probative facts to support the conclusion reached" by the jury. Lavender v. Kurn, 327 U.S. 645, 653, 90 L.Ed. 916, 66 S.Ct. 740 (1946); see also Smith v. National Railroad Passenger Corp., 856 F.2d 647, 649 (2d Cir. 1988); Wooden v. Missouri Pac. R.R., 862 F.2d 560, 561 (5th Cir. 1989); DeBiasio v. Illinois Cent. R.R., 52 F.3d 678 (7th Cir. 1995). The more lenient standard towards non-movants applied in FELA cases stems in part from the remedial purposes served by the statutes being enforced. See Consolidated Rail Corp. v. Gottshall, 512 U.S. 532, 542, 114 S.Ct. 2396, 129 L.Ed. 2d 427 (1994)(liberal construction has led to relaxed standard of causation under FELA). In enacting the FELA, Congress intended to secure a larger proportion of jury determinations than otherwise would be available at common law. Boeing Co. v. Shipman, 411 F.2d 365, 371 (5th Cir. 1969), overruled in part on other grounds; Gautreaux v. Scurlock Marine, Inc., 107 F.3d 331, 337, 339 (5th Cir. 1997)("congressional intent in enacting the FELA was to secure jury determinations in a larger proportion of cases then would be true of ordinary common law actions"); see Atlantic & Gulf Stevedores, Inc. v. Ellerman Lines, Ltd., 369 U.S. 355, 360, 82 S.Ct. 780, 7 L.Ed. 2d 798 (1962) ( under FELA "trial by jury is part of the remedy"). Accordingly, the statutes serve a pro-plaintiff purpose and are interpreted liberally to further that purpose. See Consolidated Rail Corp. v. Gottshall, 512 U.S. at 542.

The stringent standards also stem from Supreme Court language construing the burden of proof of employer negligence under the FELA as minimal. Moore's Federal Practice, Civil §50.81. FELA plaintiffs need prove only that the employer's negligence played some part, even if slight, in producing the plaintiff's injury. Rogers v. Missouri Pac. R.R., 352 U.S. 500, 506, 77 S.Ct. 443, 1 L.Ed. 2d 493 (1957). Unless there is a complete absence of probative facts to support the conclusion

5

reached by the jury, jury verdicts in FELA cases do not require reversal as a result of speculation and conjecture. Lavender v. Kurn, 327 U.S. 645, 653.

The general grounds for a new trial under F.R.C.P. 59 are that the verdict is against the clear weight of the evidence, that the damages are excessive, that the trial was not fair, or that substantial errors occurred in the admission or rejection of evidence or the giving or refusal of instructions. Montgomery Ward & Co. v. Duncan, 311 U.S. 243, 251, 61 S.Ct. 189, 85 L.Ed. 147 (1940). The decision to grant a motion for a new trial is within the discretion of the trial court. Lama v. Borras, 16 F.3d 473, 477 (1st Cir. 1994). Although under F.R.C.P. 59 the court can weigh the evidence and assess the credibility of various witnesses, a jury verdict that is supported by the evidence may not be set aside simply because the trial judge would have reached a different result. Bandera v. City of Quincy, 220 F. Supp. 2d 26 (D. Mass. 2002). Consequently, although the court may not agree with the jury's verdict, the court cannot act merely as a "13th juror" and set aside a verdict simply because it would have reached a different result had it been the trier of fact. Id.

Where the movant seeks a new trial on the basis that the verdict is against the weight of the evidence, the court's power to overturn the jury's award is severely circumscribed. The court must tread carefully when a Rule 59 motion is predicated on this ground, since,

> to some extent at least, [the court] substitute [] [its] judgment of the facts and the credibility of the witnesses for that of the jury. Such an action effects denigration of the jury system and to the extent that new trials are granted the judge takes over, if he does not usurp, the prime function of the jury as the trier of facts.

Lind v. Schenley Indus., Inc., 278 F.2d 79, 90 (3rd Cir), cert denied, 364 U.S. 835, 5 L.Ed. 2d 60, 81 S.Ct. 58 (1960). When the argument that the evidence was insufficient forms the basis of a motion for new trial, a district court is generally well within the bounds of its discretion in denying the motion using the same reasoning as in its denial of a motion for judgment as a matter of law. Lama v.

6

Borras, 16 F.3d 473 (1st Cir. 1994), citing Robinson v. Watts Detective Agency, Inc., 685 F.2d 729, 740 (1st Cir. 1982), cert denied, 459 U.S. 1105, 1204, 74 L.Ed. 2d 953, 103 S.Ct. 728 (1983).  **III.**

**ARGUMENT**

    **A.**    **Sufficient evidence was presented at trial from which a reasonable jury could determine that the subject track switch was defective.**

Despite STR's assertion to the contrary, there was sufficient evidence for the jury to conclude that the switch was defective. In an FELA case, liability may be inferred completely from circumstantial evidence. See Rogers, 352 U.S. at 508; Mendoza, 733 F.2d at 633; Barboza, 434 F.2d at 123; Pehowic, 430 F.2d at 699; Moore v. Chesapeake & Ohio Ry., 493 F. Supp. 1252, 1265 (S.W.Va. 1980), aff'd, 649 F.2d 1004 (4th Cir. 1981).  Indeed, it may be based exclusively on "facts and circumstances which, in light of ordinary experience, reasonably suggest that [the] defendant's negligence produced the injury." Van Holt v. Nat'l R.R. Pass. Corp., 283 Ill. App. 3d 62, 68, 669 N.E.2d 1288, 1293 (1996), cert. denied, _ U.S. _, 117 S.Ct. 1694, 137 L.Ed.2d 820 (1997). And the jury in an FELA case possesses particularly "broad powers" to "engage in inferences." Mendoza, 733 F.2d at 633; Barboza v. Texaco, Inc., 434 F.2d 121 (1st Cir. 1970). A verdict is not "one of speculation and conjecture [simply] because inferences are arrived at by the application of general experience and common reaction to the evidentiary situation." Henwood v. Coburn, 165 F.2d 418, 423 (8th Cir. 1948).

> Whenever facts are in dispute or the evidence is such that fair-minded men may draw different inferences, a measure of speculation and conjecture is required on the part of those whose duty it is to settle the dispute by choosing what seems to them to be the most reasonable inference.

Lavender v. Turn, 327 U.S. 645, 653 (1946).

The courts, therefore, have liberally applied the Rogers standard in favor of FELA plaintiffs. In Harris v. Pennsylvania R.R., 361 U.S. 15 (1959), the plaintiff slipped on a cross-tie while engaged

7

in refracting two derailed boxcars. He instituted an FELA case and, at trial, alleged he was injured because the cross-tie was covered with either grease or oil and was elevated a substantial distance above ground level. Both negligence claims were submitted to the jury, and the Supreme Court, in a per curium ruling citing Rogers, held there was sufficient evidence to support the jury's finding of employer liability. The only evidence that there was any grease on the cross-tie, however, was Harris's testimony on cross-examination that he had seen some grease on the sole of his right shoe after he fell. See Harris v. Pennsylvania R.R., 168 Ohio St. 582, 584, 156 N.E.2d 822, 824 (1959). A foreman had also testified that the railroad periodically lubricated its switches. 361 U.S. at 26. Yet, Harris had never stated in his accident report, at his deposition, or on direct examination that he "encountered grease at any stage of the operation." 361 U.S. at 26-27 (Harlan, J., dissenting). Nor had he ever testified "he had seen grease anywhere in the vicinity, still less on the particular cross-tie where his foot had rested." Id. In fact, Harris only observed mud on the tie in question. 156 N.E.2d at 824. As the court of appeals noted, however, there was sufficient evidence to create a jury question as there was grease on the shoe of the foot Harris had planted on the tie and none on the one he had placed on the ground. Harris v. Pennsylvania R.R., 108 Ohio App. 541, 545-46, 146 N.E.2d 744, 747 (1957).

> The jury may well have reasoned that grease would have been found on both shoes had grease been present on the ground other than on the tie and that since the plaintiff saw it only on the shoe that had been on the tie, the jury could have inferred that it came from the tie. This testimony, considered with the obvious fact that a foot slipping on a surface gives such a person some feeling as to whether the slipping is due to mud or grease or oil...would justify a jury finding that there was grease or oil on the tie. After all, the jury saw and heard the witness and was in a position to determine the credit and the weight to be given his testimony. Moreover, they had the right to draw fair and reasonable inferences from the testimony in the light of all surrounding circumstances. This was their function under the law, and, to hold...that there was insufficient evidence to support the findings of fact would, in our opinion, be tantamount to denying this plaintiff the right to have his complaint passed upon by a jury, a clear right accorded him under the [FELA].

8

146 N.E.2d at 747.

A similar result was obtained in Taluzek v. Illinois Cen. Gulf R.R., 225 Ill.App.3d 72, 626 N.E.2d 1367 (1993). Taluzek sustained personal injuries in the process of restarting a locomotive engine. He had just walked down the catwalk, opened the engine compartment doors, and turned on the starter switch when his right leg "slipped out from under him." 626 N.E.2d at 1371. Taluzek instituted an FELA action alleging that he fell because the defendant permitted oil or grease to accumulate on the catwalk. Taluzek, however, never saw what he had slipped on. Id. He could only remember that it "felt like either grease or oil." Id. Nor did he testify that he noticed anything unusual on the catwalk or submit any evidence that there were traces of oil on his shoes. Id. A co-worker did observe a pool of oil or "some other substance" dripping from the catwalk outside the engine compartment after the accident. Id. Yet, even he did not observe any footprints in the oil. Id. Nonetheless, the court of appeals, reviewing the propriety of the denial of Taluzek's motion for judgment notwithstanding the verdict, held that the evidence created a "substantial factual dispute." Id.

> [P]laintiff in the present case bore the burden of proving that there was something unsafe or defective on the locomotive which caused his fall. The evidence presented established that no one, not even plaintiff to a great extent, witnessed the actual fall. Thus, the jury had to weigh the testimony and assess witness credibility in order to determine what occurred...[I]t was up to the jury to decide whether plaintiff stepped in the oil, causing the fall.

Id. at 1373.

In Howard v. Missouri Pac. R.R., 295 S.W.2d 68 (Mo. 1956), the court similarly recognized the light evidentiary burden of a FELA plaintiff. At trial, Howard alleged he was injured when he tripped over a piece of debris on a concrete runway adjacent to defendant's tracks. Though he did not know what caused his fall, he testified that the object "felt like" a "bolt" or a "pin." Id. at 71. He had

experienced a "rolling" sensation under the ball of his foot before the accident and had also heard the "clink of metal." Id. Yet, not a single witness, not even Howard himself, stated they had seen a bolt or pin at the time of the incident. Id. at 72.[1] There was, however, some testimony that the railroad's employees were constantly walking over the runway with tools and car parts. Id. The court insisted that Howard had submitted sufficient evidence to create a triable issue of employer negligence under the FELA.

> It is the position of defendant-respondent that the facts [sic] that plaintiff could not testify of [sic] having seen and visually identified the object over which he fell and that no other witness saw or discovered the bolt or pin when or after plaintiff fell are fatal to plaintiff's case...[W]e believe we should not go so far as to say as a matter of law that plaintiff's identification of the round object over which he fell as being a bolt or pin, such as used in repairing cars, by the exercise of his sense of touch in feeling the object roll under his foot and by hearing the metallic 'click' of metal on concrete was insufficient and unsubstantial in tending to show the object over which he fell was a bolt or pin.

Id. at 72.

In Barboza v. Texaco, Inc., 434 F.2d 121 (1st Cir. 1970), a First Circuit Jones Act case, an employee slipped on squash while descending a stairway. Squash was found on his foot and on the stairway. After a jury found in favor of the employee, the employer appealed, arguing that there was no basis, other than speculation, for determining how the squash got onto the employee's foot. The court denied the petition, holding the evidence warranted the jury in finding it more probable than not that it was not the employee who brought the squash onto the stairs. The court held once the jury had inferred the squash was tracked onto the stairs by another member of the crew, it was reasonable then to infer negligence. Texaco attempted to claim that the more plausible explanation for the

---

[1] The plaintiff alleged that it must have "kick[ed] toward the tracks" after the accident. Id. at 71.

presence of the squash was that it was tracked in by the plaintiff himself. The First Circuit disagreed:

> It does not matter that, from the evidence, the jury may also with reason, on grounds of probability, attribute the result to other causes," including plaintiff's own negligence. 352 U.S. at 506, 77 S. Ct. at 448. This language is consistent with that of an earlier case, Lavender v. Turn, 1946, 327 U.S. 645, 653, 66 S. Ct. 740, 744, 90 L. Ed. 916 where the Court said, "Only when there is a complete absence of probative facts to support the conclusion reached does a reversible error appear. Where, as here, there is an evidentiary basis for the jury's verdict, the jury is free to discard or disbelieve whatever facts are inconsistent with its conclusion." By this language the Court has evidently rejected any test as strict as appellant's more-probable-than-not standard for limiting jury inferences. In these cases, and in later ones resting on their authority, cited post, the Court has allowed jury inferences as to both the cause of an accident and as to the presence of negligence, on the basis of evidence which reasonably supports the inferences but does not make them more probable than not.

In the present case, the testimony of the plaintiff, Larry Ferguson, and P.J. Collins presented both evidence of and reasonable inferences as to the existence of a defective condition. In contrast, the evidence cited by STR in their motion is either inaccurate (testimony of P.J. Collins that he reported an unidentified problem with the switch on the date prior to the accident) or rejected by the jury (switch was never taken out of service; switch was never found to be in a defective condition by any STR maintenance personnel during the relevant period; no problems were ever reported with the switch on the train sheets during the six months preceding the date of the accident; weather conditions on the date of the accident).

STR's reliance on Carlew v. Burlington Northern Railroad Company, 514 So. 2d 899 (Ala. 1987) is inapposite to the present case. In Carlew, the only evidence regarding the condition of the switch was the testimony of a witness who did not see the accident, but to whom the plaintiff complained of pain. The witnesses' assumption that "the switch could not be thrown, it must have been frozen" was deemed insufficient to establish a defective condition. However, in the case sub judice, there is evidence that, prior to the accident, the switch had been misaligned, that the

misalignment would prevent the switch from being thrown, and that the switch was never repaired. Thus, STR is unable to sustain its burden to demonstrate a "complete absence of probative facts" to support the conclusion reached by the jury that STR was negligent in maintaining the switch. To the contrary, there is substantial evidence to support the jury's conclusion that the switch was defective.

> **B.** **Sufficient evidence was presented at trial from which a reasonable jury could determine that STR was on notice prior to the accident of any defective condition involving the rail switch during the relevant period.**

The FELA establishes a duty on the part of a common carrier to use reasonable care in providing employees a safe work environment. See Bailey v. Central Vermont R.R. Co., 319 U.S. 350, 352, 87 L. Ed. 1444, 63 S. Ct. 1062 (1943); Adams v. CSX Transp., Inc., 899 F.2d 536, 539 (6th Cir. 1990). Ensuring that employees have proper equipment with which to perform their work assignments falls within this duty. See Rodriguez v. Delray Connecting Ry., 473 F.2d 819, 821 (6th Cir. 1973). Moreover, a common carrier must take reasonable precautions, including inspections of its property and equipment, to protect its employees from potential harm. Cazad v. Chesapeake & Ohio Ry., Co., 622 F.2d 72, 75 (4th Cir. 1980); see also Shenker v. Baltimore & Ohio Ry. Co., 374 U.S. 1, 10, 10 L. Ed. 2d 709, 83 S. Ct. 1667 (1963). If an employer learns or should learn of a potential hazard, it must take reasonable steps to investigate and to inform and protect its employees, or it will be liable when injury occurs. See Mohn v. Marla Marie, Inc., 625 F.2d 900, 902 (9th Cir. 1980).

The catalyst which ignites this duty is knowledge, either actual or constructive. See Schilling v. Delaware & H. R. Corp., 114 F.2d 69, 71 (2d Cir. 1940). In order to prevail on a claim of defective equipment, a plaintiff must demonstrate that the defendant had actual or constructive notice of the defect or that the injury was reasonably foreseeable to the defendant. See, e.g., Baynum v.

12

Chesapeake & Ohio Ry. Co., 456 F.2d 658, 660 (6th Cir. 1972); Adams, 899 F.2d at 539. The test of foreseeability, however, "does not require that the negligent person should have been able to foresee the injury in the precise form in which it in fact occurred. Rather it is sufficient if the negligent person might reasonably have foreseen that an injury might occur." Green v. River Terminal Ry., 763 F.2d 805, 808 (6th Cir. 1985); see also Gallick v. Baltimore & O.R.R., 372 U.S. 108, 120, 9 L. Ed. 2d 618, 83 S. Ct. 659 (1963); Syverson, 19 F.3d at 827; McCracken v. Richmond, Fredericksburg & Potomac R.R., 240 F.2d 484, 487 (4th Cir. 1957) ("the particular and exact manner of the accident need not be foreseen").[2] Indeed, under the FELA, a railroad is liable for all unexpectedly severe or

---

[2] In Gallick, for example, the railroad had permitted to exist a fetid pool of water that had attracted a variety of vermin and insects. An employee bitten by an insect in the vicinity of this pool suffered a reaction so severe as to require the amputation of his leg. "Reasonable foreseeability" was an issue because there was no evidence that the insect at issue was hatched from the stagnant pool or was attracted there by it, and because the medical consequence was highly unusual. The trial court awarded damages, but the state appeals court reversed, finding an insufficient causal connection to permit a jury verdict.

even unlikely consequences of its wrongdoing. Gallick, 372 U.S. 108. Importantly, though, "notice" and "forseeability," present issues of fact, and "as with all factual issues under FELA, the right of the jury to pass on [them] must be liberally construed." Gallose v. Long Island R.R. Co., 878 F.2d 80, 85 (2d Cir. 1989).

In the instant matter, STR relies solely on the testimony of Larry Ferguson, its Director of Train Operations, to demonstrate the lack of notice of any defect in the track switch. Mr. Ferguson examined the train sheets for the six(6) month period prior to the date of the accident, and he

---

The United States Supreme Court reversed and remanded, holding that since the railroad "knew that the accumulation of the pool of water would attract bugs and vermin to the area--it is clear that the jury concluded that respondent should have realized the increased likelihood of an insect's biting petitioner while he was working in the vicinity of the pool." Gallick, 372 U.S. at 118-119. The plaintiff was therefore not required to specifically demonstrate that the untended condition could be expected to result in so terrible a harm. Indeed, the Gallick Court held that:

> ...for a defendant to be liable for consequential damages he need not foresee the particular consequences of his negligent acts: assuming the existence of a threshold tort against the person, then whatever damages flow from it are recoverable.

Gallick, 372 U.S. at 121.

indicated there was no mention on the train sheets of the switch involved in the plaintiff's claim except on the train sheet dated March 12, 2001. Mr. Ferguson testified that any crew members that encountered a problem of any type and nature with the switch were required and expected to report it to the dispatcher, and if a problem was not reported on the train sheet, then, in STR's opinion, the problem did not exist. Mr. Ferguson indicated that the train sheets are maintained by STR, in part, for review by the Federal Railroad Administration (FRA), which gives out the annual "Harriman Award" to the railroads with the best safety records. Mr. Ferguson admitted that the more unsafe conditions reported to the FRA, the less likely that a railroad would win the "Harriman Award".

In contrast, Mr. Collins notified STR's Track Department, who was responsible for the maintenance of the switch, three (3) times within the six (6) month period prior to the accident that the switch was misaligned, described the problems caused by such a misalignment, and indicated that STR failed to take remedial measures before the plaintiff's accident. Again, STR is unable to sustain its burden to demonstrate a "complete absence of probative facts" to support the conclusion reached by the jury that STR was negligent in maintaining the switch. To the contrary, there is substantial evidence that STR was on notice of a defective condition involving the rail switch prior to the accident.

IV.   **CONCLUSION**

For all the foregoing reasons, Plaintiff respectfully requests that STR's Motion for Judgment Notwithstanding the Verdict Pursuant to F.R.C.P. 50, or, in the Alternative, Motion for New Trial Pursuant to F.R.C.P. 59 be denied.

Respectfully submitted,

DAVID DEITZEL,
By His Attorneys,

BARISH ◆ ROSENTHAL

/s/Rudoph v. DeGeorge
Rudolph V. DeGeorge, II, Esquire
Three Parkway, Suite 1320
1601 Cherry Street
Philadelphia, PA 19102
(215) 923-8900

DAVIDS & ASSOCIATES, P.C.

/s/Ronald M. Davids
Ronald M. Davids
40 Washington Street – Suite 20
Wellesley, MA 02481
(781) 416-5055
BBO No.: 115110

**CERTIFICATE OF SERVICE**

I, Ronald M. Davids, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and paper copies will be sent to those identified as non-registered participants on October 26, 2006.

/s/Ronald M. Davids
Ronald M. Davids

IN THE UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| DAVID DEITZEL | : | |
| Plaintiff, | : | |
| v. | : | CIVIL ACTION |
| SPRINGFIELD TERMINAL RAILWAY COMPANY | : | NO. 03-12560-RGS |
| Defendant. | : | |

## ORDER

AND NOW, this          day of                  , 2006, upon consideration of Defendant, Springfield Terminal Railway Company's Motion for New Trial (Document 38), and any response thereto, it is ORDERED that the Motion is hereby DENIED.

J.

IN THE UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| DAVID DEITZEL | : | |
| Plaintiff, | : | |
| v. | : | CIVIL ACTION |
| SPRINGFIELD TERMINAL RAILWAY COMPANY | : | NO. 03-12560-RGS |
| Defendant. | : | |

## ORDER

AND NOW, this _____ day of _____, 2006, upon consideration of Defendant, Springfield Terminal Railway Company's Motion for Judgment Notwithstanding the Verdict (Document 38), and any response thereto, it is ORDERED that the Motion is hereby DENIED.

J.