# Exhibit B

SHEET 1 PAGE 1

```
00001
01
02                  UNITED STATES DISTRICT COURT
03          DISTRIC OF MASSACHUSETTS
04
05
06                              )
07   DAVID DEITZEL,             )
08              Plaintiff       )
09                              )
10   v.                         )
11                              )  Civil Action
12   SPRINGFIELD TERMINAL RAILWAY )  No.: 03-12560-RGS
13   COMPANY, and GUILDFORD RAIL )
14   SYSTEMS,                   )
15              Defendant       )
16                              )
17                              )
18
19          THE AUDIOVISUAL DEPOSITION OF PHILIP J. COLLINS,
20   a witness called on behalf of the Plaintiff, taken pursuant
21   to the Massachusetts Rules of Civil Procedure, before Ellen
22   Dubie, a Professional Court Reporter and Notary Public in and
23   for the Commonwealth of Massachusetts, at the Home of
24   Philip J. Collins, 25 Bradford Street, Westford, Massachusetts,
25   on FRIDAY, DECEMBER 2, 2005, commencing at 12:19 p.m.
```

PAGE 3

```
00003
01   I N D E X
02   WITNESS              EXAMINATION BY           PAGE
03   Philip J. Collins
04                        (By Mr. De George)       7, 62
05                        (By Mr. O'Brien)         35, 63
06
07   E X H I B I T S
08   NO.                  DESCRIPTION              PAGE
09   1                    Letter                   4
10
```

PLAINTIFF'S EXHIBIT 2

PAGE 2

```
00002
01   A P P E A R A N C E S
02   R
03   RUDOLPH V. DE GEORGE, II, ESQUIRE
04   Barish & Rosenthall
05   Three Parkway, Suite 1320
06   1601 Cherry StreetP
07   Philadelphia, PA 19102
08   (215) 923-8900/FAX (215) 351-0593
09       On Behalf of the Plaintiff, David Deitzel.
10
11   JOHN J. O'BRIEN, JR., ESQUIRE
12   O'Brien & von Rosenvinge, P.C.
13   27 Mica Lane, 2nd Floor
14   Wellesley, MA 02481
15   (781) 239-9998/FAX (781) 239-3360
16   On Behalf of the Defendant,
17       Springfield Terminal Railway Company.
18   ALSO PRESENT:
19   Mr. Frank Dunn, Videographer
20   Dunn & Goudreau Court Reporting Service, Inc.
21   Mr. David Deitzel
```

PAGE 4

```
00004
01   P R O C E E D I N G S
02         (Exhibit No. 1 marked for identification.)
03         MR. DE GEORGE: This is Rudolph De George for
04   the plaintiff in this matter. We're at the home of P.J.
05   Collins, who is a person who was identified in the
06   defendant's automatic disclosures as a person with
07   discoverable information in this case, a person who was
08   mentioned in the plaintiff's answers to interrogatories
09   as a person who has knowledge both of the accident and
10   of the condition of the switch prior to the accident.
11   Mr. Collins's name was also testified to -- mentioned by
12   Mr. Deitzel in his deposition as someone who has
13   knowledge of the condition of the switch before the
14   accident and of circumstances surrounding the accident
15   in this case.
16   The defendant filed a motion for summary
17      judgment on or about November 14, 2005, and I had
18   asked for an extension of time with the hope of taking
19   the        deposition of P.J. Collins based on the information
20   I believe that he had available about the switch in the
21   incident. I did contact Mr. O'Brien, and Mr. O'Brien
22   was       kind enough to contact Mr Collins and forward me a
23   letter advising of Mr. Collins' physical condition.
24   It's your letter dated November 21, 2005. Jack, it's
```

SHEET 8 PAGE 29

```
00029
01    A.    I was told that there was no other engineer, and I
02 could call it a day, go home, nobody else to relieve me.
03    Q.    And is that what you did?
04    A.    That's exactly what I did.
05    Q.    The switch that Mr. Deitzel was attempting to throw
06 March 12, 2001, were you familiar with that switch prior
07 to the accident?
08          MR. O'BRIEN:  Object, form.
09    A.    Yes, I was.
10    Q.    How were you familiar with that switch?
11    A.    I was familiar with that switch because we've been
12 having a lot of trouble with it out of alignment, which
13 means you cannot throw it from one direction or another.
14          MR. O'BRIEN:  Move to strike.
15    Q.    For how -- when was -- how --
16          MR. O'BRIEN:  On the basis of opinion and
17 materiality and relevancy.
18    Q.    How long before the accident dated March 12, 2001,
19 had that switch been a problem?
20          MR. O'BRIEN:  Object as to form and opinion,
21 relevance, and materiality.
22    A.    My opinion is it was over a year when I turned it
23 in myself.
24    Q.    When you say you "turned it in," what do you mean
```

PAGE 30

```
00030
01 by that?
02    A.    I mean, I called in the appropriate people which
03 would be the track department, and I'm concerned with my
04 other half of the crew that the conductor's going to get
05 hurt.  There's fighting with that switch.
06    Q.    Do you remember --
07          MR. O'BRIEN:  Move to strike.  Go ahead.
08    Q.    Do you remember who you spoke to at the track
09 department about the switch?
10    A.    No, I don't.
11    Q.    You said that there were some conductors that were
12 having difficulties with the switch.  Do you know the
13 names of any of those conductors?
14    A.    Not at this -- I don't remember.
15          MR. O'BRIEN:  Object to form.
16          THE WITNESS:  I'm sorry, I'm sorry.
17          MR. O'BRIEN:  Go ahead.  You're answer is no?
18    A.    No, I don't.  I don't remember.
19    Q.    Did you have to fill out any paperwork in order to
20 turn in the switch?
21    A.    No, just a verbal report.
22    Q.    How many times had you made the track department
23 aware, prior to the accident, of difficulty throwing the
24 switch?
```

PAGE 31

```
00031
01          MR. O'BRIEN:  Object as to form, relevancy, and
02 materiality.
03    A.    A minimum of three times.
04    Q.    Over how long a period of time prior to the
05 accident?
06    A.    Six months.
07    Q.    Were you aware whether the track department made
08 any repairs to the switch after you turned it in?
09    A.    After it was turned in -- it was a number of years
10 later -- it was replaced.
11          MR. O'BRIEN:  Move to strike, nonresponse.
12    Q.    Was it replaced before or after Mr. Deitzel's
13 accident?
14          MR. O'BRIEN:  Object as to materiality and
15 relevancy.
16    A.    After.
17    Q.    Did you observe any replacement or repairs to that
18 switch before Mr. Deitzel got hurt?
19          MR. O'BRIEN:  Object as to form.
20    A.    No, I didn't.
21    Q.    Did you ever speak to Mr. Towle about Mr. Deitzel's
22 accident?
23    A.    Yes, I did.
24    Q.    When did you speak to him?
```

PAGE 32

```
00032
01    A.    The year he retired.  It was 2005 -- 2003 he called
02 me at Ayer, and I had a brief conversation with him.  He
03 was asking me if I remembered.
04          MR. O'BRIEN:  Let's wait for the question, sir, all
05 right, before you say -- have you answered counsel's
06 question?
07          THE WITNESS:  I don't know.
08    Q.    Do you recall what he said to you and what you said
09 to him?
10          MR. O'BRIEN:  My objection, on hearsay and
11 relevancy and materiality.
12    A.    Yes, he asked me if I remembered David Deitzel
13 getting hurt in Nashua, and I said yes.
14    Q.    And did he ask you anything else?
15          MR. O'BRIEN:  Objection, relevancy and materiality,
16 hearsay.
17    A.    Yes, he asked me what month and what day and I told
18 him.
19    Q.    What did you tell him?
20    A.    I told him it was in March, on the day he set us
21 back two hours on account of snow.
22    Q.    Do you recall anything else about the conversation
23 with Mr. Towle other than what you've mentioned already?
24    A.    Mr. Towle said he --
```