IN THE UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

DAVID DEITZEL

    Plaintiff,

v.                                                                         CIVIL ACTION

SPRINGFIELD TERMINAL RAILWAY                   NO. 03-12560-RGS
COMPANY

    Defendant.

PLAINTIFF, DAVID DEITZEL'S RESPONSE TO DEFENDANT,
SPRINGFIELD TERMINAL RAILWAY COMPANY'S MOTION FOR NEW TRIAL
PURSUANT TO F.R.C.P. 59(a) AND TO ALTER OR AMEND JUDGMENT
AND FOR A REMITTITUR PURSUANT TO F.R.C.P. 59(e)

I. **FACTS AND PROCEDURAL HISTORY**

On October 3, 2006, the above-captioned case was tried before this court and a jury. On October 5, 2006, the jury returned a gross verdict in favor of plaintiff and against defendant in the amount of $1,322,800.00. Specifically, the jury found that the defendant, Springfield Terminal Railway Company ("STR") was negligent in maintaining the switch at its Nashua, New Hampshire Yard on March 12, 2001; that such negligence played a part in causing injuries to plaintiff; that the plaintiff was contributorily negligent; that his negligence played a part in causing his injuries; and that STR was 70% negligent, and the plaintiff 30% negligent. Accordingly, the court reduced the award to $925,960.00. Document 33. On October 13, 2006, STR filed a Motion for New Trial pursuant to F.R.C.P. 59(a) and to Alter or Amend Judgment and for Remittitur pursuant to F.R.C.P. 59(e). Specifically, STR alleges that there was insufficient evidence presented at trial from which a reasonable jury could determine, by a preponderance of the evidence, that STR was negligent; that the jury's determination of a percentage of only 30% comparative negligence attributable to the

plaintiff was too low based upon the evidence presented at trial; and that the damages award was grossly excessive and contrary to the weight of the evidence.

The evidence adduced at trial indicated that on March 12, 2001, plaintiff, who was employed by STR as a conductor, was attempting to throw a switch in the Nashua, New Hampshire Yard when the switch, after moving approximately three inches, ceased to move any further, causing the plaintiff to suffer injuries to his neck, left shoulder and dominant left arm. The plaintiff was not regularly assigned to the Nashua Yard, but worked there on the date of accident at the request of STR. On that date, the plaintiff was part of a two man crew with an engineer, P.J. Collins, who was regularly assigned to the Nashua Yard. The plaintiff had been throwing switches since he began his employment at STR in 1987, and indicated that when throwing a switch, the switch should move in a smooth and continuous motion. However, on the date of the accident, the switch abruptly stopped its movement. The plaintiff reported the condition of the switch and his injury to the train dispatcher, who noted on the train sheet for March 12, 2001 that "... CNDR Deitzel pulled a muscle in back or shoulder throughing (sic) switch in Nashua YD. S/E Lead Switch to 4 + 3".

According to Larry Ferguson, STR's Director of Operations who, as part of his job responsibilities, interprets notations on train sheets, the entry in the March 12, 2001 train sheet indicated that there was a defect in the switch, and that an injury occurred.

Within six months of the date of the accident, the switch that plaintiff was attempting to throw was observed out of alignment, which would prevent it from being thrown from one direction to another. Testimony of P.J. Collins, Trial Exhibit 2, page 29-31. However, despite Mr. Collins notifying the Track Department of the problems with the switch on three (3) different occasions within those six months, no repairs were ever made. Id., p.31. After the accident, Mr. Collins informed Plaintiff of the aforementioned problems with the switch.

3

After the incident, the plaintiff continued to work, but with pain. Because of continuing pain in his left shoulder and left arm with associated numbness and tingling, plaintiff received emergency room treatment on July 25, 2002 and visited his family physician, Dr. Robert A. Babineau, who put him out of work for approximately one (1) month. After returning to work, plaintiff complained to Dr. Babineau on September 23, 2002 of pain in his shoulders and numbness, and was prescribed Vicodin. Plaintiff continued to work in pain until March, 2004 when he related the same complaints to Dr. Babineau and began a course of treatment which resulted in surgery on March 30, 2005. Testimony of David Deitzel, October 5, 2006, hereinafter "Document 40", page 5.

Plaintiff was out of work for two (2) months prior to and after the surgery. Document 40, page 6. Surgery improved the numbness, but not the pain. Document 40, page 6-7. In September, 2005, he returned to his surgeon, Dr. Sidney Paly, who put him out of work because of his continuous pain. Document 40, page 8-9. On September 21, 2005, plaintiff visited an orthopedic surgeon, Dr. Michael Kennedy, who opined that the March 12, 2001 incident caused a disc herniation at C5-6, and that plaintiff suffered a 10% permanent impairment of his whole person. Plaintiff was out of work for two (2) months, returning in December of 2005 after some improvement in his symptoms. Document 40, page 9.

However, the plaintiff returned to Dr. Kennedy on January 9, 2006 complaining of pain, and trigger point injections were recommended. Document 40, page 10. Because the plaintiff did not want to take off any additional long periods from work because he was concerned about his job, Dr. Babineau suggested that plaintiff take off days as needed. Document 40, page 11. Plaintiff took approximately 12-13 days off from January, 2006 to May, 2006 (Document 40, page 12-13) because of his medical condition of chronic neck pain with radiculopathy and status post neck surgery, and pain medications necessitated by said condition.

In May 2006, plaintiff was advised by STR to apply for leave under the Family and Medical Leave Act (FMLA) because of the amount of time he had been taking off. Document 40, page 13. Plaintiff applied and was approved for FMLA leave. Document 40, page 14. Despite being approved for FMLA leave, the plaintiff was charged by STR with "Excessive Absenteeism". Document 40, page 15. After a hearing in June, the plaintiff was fired by STR on or about July 3, 2006. Document 40, page 15.

As of November 12, 2004, the last year that plaintiff worked without absences due to his injuries, he earned $74,668.51, which included overtime. Document 40, page 18. Plaintiff missed four (4) weeks of work in 2005 for which he did not receive pay, and earned a total of $39,202.91 during that year. Document 40, page 18-19. Plaintiff has received no vocational training other than the training received on the railroad to do either a brakeman's or conductor's job. Document 40, page 20-21. If healthy, the plaintiff intended to work on the railroad until age 65. Document 40, page 21. Plaintiff sought employment after his firing and was only able to secure a job at a fast food dairy bar beginning the week of October 9, 2006. Document 40, page 21. He was offered and accepted twenty (20) hours per week at $7.00 per hour. Document 40, page 21.

Dr. Kennedy opined that as of September 26, 2006, the plaintiff cannot stand for periods of time greater than 2-3 hours, walk for distances greater than one (1) mile, or drive for periods of time greater than 45 minutes. Moreover, he cannot lift loads on a repetitive basis, and the maximum that he can lift at once was 15-20 pounds. Dr. Kennedy further opined that the plaintiff was unable to return to his old job as a conductor, both at present and in the future. In addition, because of his injuries, plaintiff was unable to enjoy his usual activities of daily living, including softball, golf, deep-sea fishing, and riding a motorcycle. Document 40, page 22-23.

## II.  STANDARD OF REVIEW

The general grounds for a new trial under F.R.C.P. 59(a) are that the verdict is against the clear weight of the evidence, that the damages are excessive, that the trial was not fair, or that substantial errors occurred in the admission or rejection of evidence or the giving or refusal of instructions. Montgomery Ward & Co. v. Duncan, 311 U.S. 243, 251, 61 S.Ct. 189, 85 L.Ed. 147 (1940). The decision to grant a motion for a new trial is within the discretion of the trial court. Lama v. Borras, 16 F.3d 473, 477 (1st Cir. 1994). Although under F.R.C.P. 59 the court can weigh the evidence and assess the credibility of various witnesses, a jury verdict that is supported by the evidence may not be set aside simply because the trial judge would have reached a different result. Bandera v. City of Quincy, 220 F. Supp. 2d 26 (D. Mass. 2002). Consequently, although the court may not agree with the jury's verdict, the court cannot act merely as a "thirteenth juror" and set aside a verdict simply because it would have reached a different result had it been the trier of fact. Id.

Where the movant seeks a new trial on the basis that the verdict is against the weight of the evidence, the court's power to overturn the jury's award is severely circumscribed. The court must tread carefully when a Rule 59 motion is predicated on this ground, since,

> to some extent at least, [the court] substitute [] [its] judgment of the facts and the credibility of the witnesses for that of the jury. Such an action effects denigration of the jury system and to the extent that new trials are granted the judge takes over, if he does not usurp, the prime function of the jury as the trier of facts.

Lind v. Schenley Indus., Inc., 278 F.2d 79, 90 (3rd Cir), cert denied, 364 U.S. 835, 5 L.Ed. 2d 60, 81 S.Ct. 58 (1960). When the argument that the evidence was insufficient forms the basis of a motion for new trial, a district court is generally well within the bounds of its discretion in denying the motion using the same reasoning as in its denial of a motion for judgment as a matter of law. Lama v.

Borras, 16 F.3d 473 (1st Cir. 1994), citing Robinson v. Watts Detective Agency, Inc., 685 F.2d 729, 740 (1st Cir. 1982), cert denied, 459 U.S. 1105, 1204, 74 L.Ed. 2d 953, 103 S.Ct. 728 (1983).

STR also moves to amend the final judgment under Rule 59(e). Rule 59 requires a finding that "the verdict is so seriously mistaken, so clearly against the law or evidence, as to constitute a miscarriage of justice." TransAmerica Premier Ins. Co. v. Ober, 107 F.3d 925, 929 (1st Cir. 1997); accord Colasanto v. Life Ins. Co. of North America, 100 F.3d 203, 212 (1st Cir. 1996); Sanchez v. Puerto Rico Oil Co., 37 F.3d 712, 717 (1st Cir., 1994)(court will set aside jury verdict only if it "is against the demonstrable weight of the credible evidence or results in a blatant miscarriage of justice"). This strict standard of review is especially appropriate where, as here, the motion for new trial is based on a claim that the verdict is against the weight of the evidence. TransAmerica Premier Insurance Co. v. Ober, 107 F.3d at 921.

As to STR's assertion that the award is "excessive", this court is obligated to grant a new trial "only when the award 'exceeds any rational appraisal or estimate of the damages that could be based upon the evidence before it.'" Eastern Mountain Platform Tennis, Inc. v. Sherwin-Williams Co. Inc., 40 F.3d 492, 502 (1st Cir. 1994); accord Anthony v. G.N.D. Airlines Serv. Inc., 17 F.3d 490, 493 (1st Cir. 1994). A jury's award of damages "will withstand scrutiny unless it is 'grossly excessive, inordinate, shocking to the conscience of the court, or so high that it would be a denial of justice to permit it to stand.'" Blinzler v. Marriott Int'l, Inc., 81 F.3d 1148, 1161 (1st Cir. 1996); accord McMillan v. Mass. Soc. for the Prevention of Cruelty to Animals, 140 F.3d 288, 306 (1st Cir. 1998). As explained by the court in Mejias-Quiros v. Maxsam Property Corp., 108 F.3d 425 (1st Cir. 1997), the "general language ('rational basis'), is given context by cases declaring that the verdict should stand unless it is 'grossly excessive,' 'inordinate,' 'shocking to the conscience of the court,' or 'so high that it would be a denial of justice to permit it to stand.'" 108 F.3d at 428. A review of a damage

award must focus on the evidence presented at trial and the court should not overturn a jury award that has substantial basis in the evidence. See Havinga v. Crowley Towing and Transp. Co., 24 F.3d 1480, 1488 (1st Cir. 1994). A jury award should not be disturbed only because "it is extremely generous or because . . . [the court] thinks [that] the damages are considerably less . . ." Diefenbach v. Sheridan Transp., 229 F.3d 27, 32 (1st Cir. 2000)(quoting Koster v. Trans World Airlines, Inc., 181 F.3d 24, 34 (1st Cir.), cert. denied, 528 U.S. 1021, 145 L.Ed. 2d 412, 120 S.Ct. 532 (1999)).

### III.  ARGUMENT

#### A.  Sufficient evidence was presented at trial from which the jury could determine negligence on the part of STR.

The FELA imposes on a railroad a duty to exercise reasonable care to provide all of its employees with a reasonably safe place in which to work, reasonably safe conditions in which to perform their duties, and reasonably safe tools and equipment with which to complete their jobs. See e.g. Shenker v. Baltimore & Ohio R.R., 374 U.S. 1 (1963); Urie v. Thompson, 337 U.S. 163 (1949); Bailey v. Central Vermont R.R., 319 U.S. 350 (1943); New York, N.H. & H.R. Co. v. Dox, 249 F.2d 572 (1st Cir. 1957). This non-delegable duty is continuing and imposes on a railroad a responsibility to inspect, maintain, and/or repair its property to ensure that its equipment, tools, machinery, and/or appliances and/or the surface conditions of its yards, tracks and roadbeds are reasonably safe. See Shenker, 374 U.S. 1; Harris v. Pennsylvania R.R., 361 U.S. 15 (1959); Webb v. Illinois Central R.R., 352 U.S. 512 (1957). It also includes a responsibility to make reasonable inspections of its premises and equipment to discover any dangers or defects and to take reasonable precautions to protect its employees from possible harm. See Shenker, 374 U.S. 1.

The FELA imposes on a railroad a non-delegable duty to guard against any risks or dangers of which if knew or in the exercise of reasonable care should have known. See Gallick v. Baltimore

& Ohio R.R., 372 U.S. 108 (1963); Urie, 337 U.S. 163. A jury may impute actual knowledge of a dangerous condition or defect to the railroad if its officers, agents, or employees knew or should have known of the condition. See Gallick, 372 U.S. 108.

Based on the evidence, and for the reasons set forth in plaintiff's response to STR's Motion for Judgment Notwithstanding the Verdict Pursuant to F.R.C.P. 50, or in the Alternative, Motion for New Trial Pursuant to F.R.C.P. 59 (Document 41), there is substantial evidence to establish that the switch was not reasonably safe, and that STR had notice of the unsafe condition and failed to repair same. Given this evidence, the railroad breached its duty to provide plaintiff with a reasonably safe place in which to work, and thus was negligent.

    **B.**    **STR's assertion that the jury's determination of 30% comparative negligence was too low is unsupported by the evidence.**

Under the FELA, where negligence on the part of the employer is shown, contributory negligence on the part of the injured employee does not bar recovery but simply requires that the damages shall be diminished in proportion to the amount of negligence attributable to such an employee. 45 U.S.C. §53; Wiggins v. Powell, 119 F.2d 751 (5th Cir. 1941). It is well settled that such degrees of negligence are to be determined and compared by the jury under the facts and circumstances of the particular case. Union Pacific R. Co., v. Hadley, 246 U.S. 330, 331, 38 S.Ct. 318, 62 L.Ed. 751 (1918); Rocco v. Lehigh Valley R. Co., 288 U.S. 275, 53 S.Ct. 343, 77 L.Ed. 743 (1933); Seaboard Airline R. Co., v. Tilghman, 237 U.S. 499, 35 S.Ct. 653, 59 L.Ed. 1069 (1915). Courts have long been, and should be, especially reluctant to overturn a jury finding of negligence in an FELA case. See Rogers v. Missouri Pacific R. Co., 352 U.S. 500, 77 S.Ct. 443, 1 L.Ed. 2d 493 (1957); Mileski v. Long Island R. Co., 499 F.2d 1169 (2nd Cir. 1974); Fox v. New York R. Co., 267 F.2d 532, 534 (2nd Cir. 1959). It is a function of the comparative negligence doctrine to permit the

jury to reconcile conflicting versions of an episode. Akermanis v. Sea-Land Serv. Inc., 688 F.2d 898 (2nd Cir. 1982), cert. denied, 461 U.S. 927, 77 L.Ed. 2d 298, 103 S.Ct. 2087 (1983) and cert. denied, 464 U.S. 1039, 79 L.Ed. 2d 165, 104 S.Ct. 700 (1984).

In the present case, STR contends that the jury should have found plaintiff more than 30% negligent based on the following "evidence": testimony by David Nagy, STR's Director of Safety, that as soon as the plaintiff encountered resistance with the switch, he should have stopped and reported the problem to his supervisors; and that plaintiff had to "apply elbow grease" after resistance was encountered, in violation of an STR and NORAC safety rule. However, plaintiff was never charged by STR with a violation of safety rules; STR's "expert" in throwing switches, Mr. Nagy, had only five (5) months of experience in *occasionally* throwing switches; and every switch in every rail yard requires some "elbow grease" to be thrown. In this case, it is clear that the jury considered the above evidence, along with the testimony of plaintiff and P.J. Collins, to conclude that plaintiff was 30% negligent. Under the rule of comparative negligence, it is for the jury to consider all circumstances which characterize negligence of either party and which tend to fix the quantity and quality of that negligence in its relation to some total of negligence of both parties. New York, C. & St. L.R. Co., v. Niebel, 214 F. 952 (6th Cir. 1914); see also Sears v. Southern Pacific Co., 313 F.2d 498 (9th Cir. 1963).

A trial court was faced with a similar challenge to a jury's assignment of percentages of comparative negligence in Morgan v. Consolidated Rail Corporation, 509 F. Supp. 281 (S.D.N.Y. 1980). In Morgan, the railroader was struck in the face by a bottle thrown by an unidentified youth through the open side window of the locomotive cab in which he was riding. The railroader alleged that Morgan was aware of the danger of such vandalism, yet failed to close the window which would render the cab "almost bulletproof". The jury found the defendant 75% negligent and the plaintiff

10

25% negligent. Both the railroad and Morgan moved for judgment n.o.v. on the basis that there was no support in the evidence for the jury findings of negligence and of contributory negligence. In addition, the railroad moved for a new trial on the ground that the jury's verdict was against the weight of the evidence. The trial court, after noting that the jury chose, as it may not, to resolve certain disputes in the evidence in favor of Morgan, and to find that there was something more the railroad could and should have done, in the exercise of reasonable care under all the circumstances, to prevent such a thing from happening, concluded that there was insufficient ground, if any, for upsetting the jury findings, and denied the railroad's motion for judgment n.o.v. 509 F. Supp. at 285. The trial court denied the railroad's motion for new trial on the same issue for similar reasons. Id.

To set aside the verdict for a new trial, it must be "quite clear" to the court that "the jury has reached a seriously erroneous result" amounting to "a miscarriage of justice", 509 F. Supp. at 285. In the present case, STR has failed to demonstrate that the jury's finding of "only" 30% negligence on the part of plaintiff was a miscarriage of justice.

### C. The damages award was not grossly excessive or contrary to the weight of the evidence.

The First Circuit has noted that it has "consistently declined to play Monday morning quarterback in reviewing a jury's assessment of damages." Segal v. Gilbert Color Sys., Inc., 746 F.2d 78, 80 (1st Cir. 1984). Although "an inadequate damages award may constitute sufficient reason for a new trial", Phav v. Trueblood, Inc., 915 F.2d 764, 766 (1st Cir. 1990), the First Circuit has emphasized the weighty burden on the moving party. A verdict may be set aside and a new trial ordered "when the verdict is against the clear weight of the evidence, or is based upon evidence which is false, or which will result in a clear miscarriage of justice." Id.

11

When reviewing an award for damages, "the district court is obliged to review the evidence in the light most favorable to the prevailing party and to grant . . . a new trial of damages only when the award exceeds any rational appraisal or estimate of the damages that could be based on the evidence before it'". E. Mountain Platform Tennis, Inc. v. Sherwin-Williams Co., 40 F.3d 492, 502 (1st Cir. 1994); See also Smith v. K-Mart Corp., 177 F.3d 19, 30 (1st Cir. 1999) ("translating legal damage into money damages is a matter peculiarly within a juries ken,' especially in cases involving intangible, non-economic losses"); Brown v. Freedman Baking Co., 810 F.2d 6, 11 (1st Cir. 1987)("we rarely will override the jury's judgment on the appropriate amount of damages to be awarded"). "The paramount focus in reviewing a damage award must be the evidence presented a trial." Gutierrez-Rodriguez v. Cartagena, 882 F.2d 553, 557 (1st Cir. 1989); a jury's award of damages will be upheld if it is within the universe of possible awards that are supported by the evidence. See Clark v. Taylor, 710 F.2d 4 (1st Cir. 1983).

In the present case, there was sufficient evidence presented to justify the jury's damages award. Plaintiff was unable to work on an everyday basis in 2005 and 2006 because of his chronic neck pain with radiculopathy and status post neck surgery, and pain medications necessitated by this condition. Because of the days missed by the plaintiff in 2006, STR fired him for "Excessive Absenteeism" on or about July 3, 2006. Moreover, Dr. Kennedy opined that as of September 26, 2006, the plaintiff had substantial restrictions in standing, walking, driving and lifting and, after reviewing STR's description of the physical requirements as a conductor, concluded that he could no longer do that job now and in the future. Based on the foregoing, plaintiff introduced medical testimony which established that he had suffered permanent physical restrictions which disqualified him from his previous job on the railroad, and rendered him unable to do any job which exceeded the restrictions set forth by Dr. Kennedy as of September 26, 2006.

Moreover, plaintiff presented evidence of earnings for (less then a full year in) 2004 in the amount of $74,668.51, which earnings included overtime, and evidence of earnings in the amount of $39,202.91 for eight (8) months of work in 2005. In addition, plaintiff intended to work on the railroad another twenty-four (24) years, to age 65. Moreover, plaintiff was able to find only a part time job after he was fired by STR which paid $140.00 per week. Based on the above evidence, the plaintiff presented a claim for loss of future earning capacity in excess of $1,600,000.00.

STR's contention that plaintiff's guarantee of wages in the amount of $47,174.00 per year represents his loss of future earning capacity, as opposed to plaintiff's earnings for (less than a full year in) 2004 in the amount of $74,668.51, which earnings included overtime, is misplaced as it blurs the line between actual loss of earnings and loss of earning capacity. In the present case, plaintiff established that his job enabled him to earn in excess of his so-called guaranteed minimum salary. Plaintiff's earning capacity is determined by what he has and could have continued to earn if he was employed on an injury free, full time basis. See McCrann v. United States Alliance, Inc., 803 F.2d 771, 773 (2nd Cir. 1986) (basic concept in calculating damage award for loss wages under the Jones Act is to place the victim in the same economic position that he would have occupied had he not been injured"); See also Jones & Laughlin Steel Corp. v. Pfeifer, 462 U.S. 523, 533, 76 L.Ed. 2d 768, 103 S.Ct. 2541 (1983)("in calculating damages, it is assumed that if the injured party had not been disabled, he would have continued to work, and to receive wages at periodic intervals until retirement, disability, or death").

Moreover, STR's argument that the plaintiff's present earning capacity is $26,000.00 per year is based on a misstatement of the evidence presented at trial. As opposed to STR's contention that the plaintiff was presently working in an ice cream shop earning $250.00 per week for 20 hours work and that he was capable of full-time work, plaintiff testified that his earnings would be $140.00 per

13

week based on the part-time job that he was offered after being fired by STR. Plaintiff's sought employment after his firing, but was necessarily restricted by physical limitations imposed by his injuries and lack of vocational training. In fact, plaintiff testified that, after his firing, the **only** job he was offered was part time employment at the ice cream store. Whether or not plaintiff's $7.00 an hour part-time job was the appropriate measure of his future economic losses was a question for the jury. Given plaintiff's limited vocational background, the jury reasonably could have calculated its future economic loss award based upon these tangible post-accident earnings.[1] Hall v. Norfolk Southern Railway Company, 829 F. Supp. 1571 (N.D. Ga. 1993). In fact, the evidence clearly establishes that, as a result of his neck injury, plaintiff was permanently disqualified from the precise type of heavy work which he had done for most his adult life.[2] And as the United States Supreme Court itself has recognized: "[W]hen the evidence in a case shows that there will be future effects from an injury, an instruction which justifies an inclusion of them in an award of damages is not

---

[1] See Southern Ry. v. Stallings, 268 Ala. 463, 470, 107 So.2d 873, 879-80 (1958) (though there was no evidence specifically defining the extent of plaintiff's overall incapacity to engage in gainful work, his future economic losses were nonetheless a question for the jury; plaintiff had sustained a permanent injury which prevented him from resuming his former position as a boilermaker and this was the only type of job that he had ever held).

[2] See Myers v. Griffin-Alexander Drilling Co., 910 F.2d 1252 (5th Cir. 1990) (court properly submitted charge on loss of future earning capacity in Jones Act case; the evidence supported jury's implicit finding that Jones Act plaintiff would be restricted to minimum wage jobs); Hall, 829 F. Supp. at 1582-83.

error." Chesapeake & Ohio Ry. v. Carnahan, 241 U.S. 241, 244 (1916).

The plaintiff's evidence of his annual earnings in a recent year of full-time, non-absent employment, contrasted to evidence of his likely earnings at the ice cream store after his largely unsuccessful search for employment after his firing, is evidence upon which a jury may reasonably determine his annualized stream of income. It is for the jury to consider and weigh all the relevant factors and to determine what price to place on a narrowing of the plaintiff's economic horizons.

Moreover, there was sufficient evidence to sustain a jury award for plaintiff's past and future pain and suffering. Under the FELA, a plaintiff's own testimony in and of itself is sufficient to warrant the submission of a future pain and suffering instruction to the jury.[3] Plaintiff testified that he still has some pain, and that the trigger point injections administered in 2006 did not provide any relief. Document 40, page 20. And, notwithstanding STR's assertion that the plaintiff's condition was completely resolved as May 2, 2005, both the plaintiff and Dr. Kennedy testified as to his permanent functional impairment and his continuing post-surgical problems with his neck, left arm and shoulder upon his return to work after May 2, 2005.[4] Given this evidence, there is sufficient evidence to establish that the plaintiff has experienced, and will continue to experience, pain and

---

[3] See Onion v. Chicago & Illinois Midland Ry., 191 Ill App.3d 318, 321, 547 N.E. 2d 721, 724 (1989) ("jurors are capable of properly evaluating a plaintiff's testimony as to pain and suffering, and they will no doubt take into account a plaintiff's interest in the outcome of the lawsuit as well as a plaintiff's lack of technical expertise on what his or her future physical condition and related pain may be"); Hernandez, 714 S.W.2d at 352-53; Grimm, 73 N.E.2d at 923.

[4] See Rogers v. Elgin, Joliet & Eastern Ry., 248 F.2d 710, 712 (7th Cir. 1957) (FELA plaintiff's own testimony, confirmed by medical evidence, that he had sustained a permanent function impairment to his left arm warranted jury instruction on future pain and suffering); Rosa, 561 P.2d at 630-31 (trial court properly submitted future pain and suffering claim to the jury where expert medical testimony established that FELA plaintiff had sustained a permanent functional impairment to her hand, and she herself stated that, as a result of her injury, she continued to experience pain in cold weather and had become restless and frustrated).

suffering as a result of his injuries.

Given the above evidence, and evidence of loss of future earning capacity in excess of $1.6 million, STR has failed to demonstrate that the jury's verdict[5] "exceeds any rational appraisal or estimate of the damages that could be based upon the evidence before it", or that the verdict was "grossly excessive, inordinate, shocking to the conscience of the court, or so high that it would be a denial of justice to permit it to stand". See <u>Bandera v. City of Quincy</u>, 220 F.Supp. 2d 26 (D.Mass. 2002).

## IV.  CONCLUSION

Based on the foregoing reasons, Plaintiff respectfully requests that STR's Motion for a New Trial Pursuant to F.R.C.P. 59(a), and to Alter and Amend Judgment and for Remittitur Pursuant to F.R.C.P. 59(e) be denied.

                                                Respectfully submitted,

DAVID DEITZEL,
By His Attorneys,

BARISH ◆ ROSENTHAL

<u>/s/Rudoph v. DeGeorge</u>
Rudolph V. DeGeorge, II, Esquire
Three Parkway, Suite 1320
1601 Cherry Street
Philadelphia, PA  19102
(215) 923-8900

---

[5] The Jury was asked by the court to render a general verdict as to the damages sustained by plaintiff as a result of the March 12, 2001 incident; thus it is pure speculation on the part of STR as to the basis for the award.

DAVIDS & ASSOCIATES, P.C.

/s/Ronald M. Davids
Ronald M. Davids
40 Washington Street – Suite 20
Wellesley, MA  02481
(781) 416-5055
BBO No.: 115110

**CERTIFICATE OF SERVICE**

    I, Ronald M. Davids, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and paper copies will be sent to those identified as non-registered participants on October 27, 2006.

/s/Ronald M. Davids
Ronald M. Davids

IN THE UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

DAVID DEITZEL                       :
                                    :
    Plaintiff,                      :
                                    :
v.                                  :      CIVIL ACTION
                                    :
SPRINGFIELD TERMINAL RAILWAY        :      NO. 03-12560-RGS
COMPANY                             :
                                    :
    Defendant.                      :

## ORDER

AND NOW, this        day of            , 2006, upon consideration of Defendant, Springfield Terminal Railway Company's Motion to Alter or Amend Judgment and for a Remittitur (Document 37), and any response thereto, it is ORDERED that the Motion is hereby DENIED.

                                                                            J.

IN THE UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

DAVID DEITZEL                          :
                                       :
      Plaintiff,                        :
                                       :
v.                                     :    CIVIL ACTION
                                       :
SPRINGFIELD TERMINAL RAILWAY           :    NO. 03-12560-RGS
COMPANY                                :
                                       :
      Defendant.                        :

## ORDER

AND NOW, this _____ day of _____, 2006, upon consideration of Defendant, Springfield Terminal Railway Company's Motion for New Trial (Document 37), and any response thereto, it is ORDERED that the Motion is hereby DENIED.

                                                                                                                        J.