UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

DAVID DEITZEL
    Plaintiff/Appellee,

v.

SPRINGFIELD TERMINAL RAILWAY
COMPANY
    Defendant/Appellant
AND
GILFORD RAIL SYSTEMS
    Defendant

CIVIL ACTION NO.: 03-12560-RGS

PLAINTIFF'S RESPONSE TO DEFENDANT, SPRINGFIELD TERMINAL RAILROAD COMPANY'S MOTION TO STAY PENDING APPEAL AND FOR WAIVER OF SUPERSEDEAS BOND, PURSUANT TO F.R.CIV. P. 62

I.    FACTS AND PROCEDURAL HISTORY

On October 3, 2006, the above-captioned case was tried before this court and a jury. On October 5, 2006, the jury returned a verdict in favor of plaintiff (hereinafter "Deitzel") and against defendant (hereinafter "STR") in the amount of $925,960.00. Document 33. On October 12, 2006, judgment was entered in favor of Deitzel against STR. Document 34. On October 13, 2006, STR filed Post-Trial Motions which were denied by the Court on November 8, 2006. Documents 37-39, 43-44. On November 14, 2006, STR filed a Notice of Appeal in the First Circuit Court of Appeals. Document 45. However, STR has not posted, as required by Local Rule 62.2, a supersedeas bond staying execution of a money judgment. Accordingly, the Clerk of Court issued a First Execution on March 5, 2007 permitting Deitzel to execute on the judgement. *See Exhibit "A"*.

1

On March 6, 2007, STR filed a Motion for Stay Pending Appeal and for Waiver of Supersedeas Bond Pursuant to F.R.Civ.P. 62.2. In support thereof, STR contends that "it has the ample financial ability to satisfy the judgment in this case in the event that their appeal is unsuccessful." Document 50, page 1. In addition, STR contends that "it operates a railroad system in Massachusetts and in other states; and in doing so, has sufficient assets in capital such as interests in real property, locomotives, and other equipment." Document 50, page 1-2.

II.  ARGUMENT
    a.  STR is entitled to neither a stay of judgment pending appeal nor a waiver of requirement under Local Rule 62.2 to post a supercedeas bond

*Fed. R. Civ. P. 62(d)* allows an appellant to obtain a stay of a monetary judgment against it by posting a supersedeas bond. Under Local Rule 62.2,

> A supersedeas bond staying execution of a money judgment shall be in the amount of the judgment plus ten (10%) percent of the amount to cover interest and any award of damages for delay plus Five Hundred and no /100 ($500.00) Dollars to cover costs, unless the court directs otherwise.

Based on a plain reading of *Fed. R. Civ. P. 62(d)* and related First Circuit cases, the posting of a supersedeas bond in the amount specified by Local Rule 62.2 results in an automatic stay of the execution of a money judgment. *Cipes v. Mikasa, Inc.*, 404 F. Supp 2d 367 (D.C. Mass.2005). However, as suggested by the language of Local Rule 62.2, this court has discretion to alter the supersedeas bond requirement. *Id.* at 369.

While the First Circuit Court of Appeals has not directly addressed the question of when a district court may allow a stay that is unsecured by a supersedeas bond, this court has adopted the analysis of the Seventh Circuit Court of Appeals, which has laid out five criteria that district courts

2

in that circuit are to consider in making waiver decisions:

> (1) the complexity of the collection process; (2) the amount of time required to obtain a judgment after it is affirmed on appeal; (3) the degree of confidence that the district court has in the availability of funds to pay the judgment; (4) whether the defendant's ability to pay the judgment is so plain that the cost of a bond would be a waste of money; and (5) whether the defendant is in such a precarious financial situation that the requirement to post a bond would place other creditors of the defendant in an insecure position.

Cipes v. Mikasa, Inc., 404 F. Supp 2d 367, 369 (D.C. Mass. 2005), citing Dillon v. City of Chicago, 866 F.2d 902, 904-05 (7th Cir. 1988)(citations omitted). That court has also indicated that the bond requirement is

> inappropriate in two sorts of case [sic]: where the defendant's ability to pay the judgment is so plain that the cost of the bond would be a waste of money; and – the opposite case ...– where the requirement would put the defendant's other creditors in undue jeopardy.

Cipes, 404 F. Supp. 2d at 369, citing Olympia Equip. Leasing Co. v. W. Union Telegraph Co., 786 F.2d 794, 796 (7th Cir. 1986).

In this case, STR argues that the supersedeas bond requirement should be waived because it will clearly be able to satisfy judgment following appeal. However, other than their assertions about their alleged good financial health, STR has produced no evidence in support of their contention. To the contrary, there is ample evidence that STR's financial situation is not as healthy as alleged. STR and its parent company engages in a practice of non-payment of taxes and other financial obligations that is startling. A series of recent newspaper articles[1] have highlighted STR's inability to pay taxes

---

[1] These newspaper articles report delinquencies which are of public record and thus possess the "circumstantial guarantees of trustworthiness" required by F.R.E. 803(24).

3

when due. As reported in an article in the Valley Advocate dated January 25, 2007, PanAm Railways, the parent company to Guilford Rail Systems (and STR)[2] owes Deerfield, Connecticut $228,078.00 in back taxes. *See Exhibit "B"*. Similarly, an article in the Kennebec Journal Morning Sentinel dated February 22, 2007 revealed that Guilford Rail Systems owed the City of Waterville, Maine $113,000.00 in real estate taxes; that the railroad company, starting as early as 2001, has had a pattern of waiting as long as possible to pay its property taxes in various parts of Maine, including Waterville, Lewiston, and Portland, as well as in Ayer, Massachusetts; that in 2004, Waterville nearly foreclosed on Guilford's local property for non-payment of about $311,000.00, and that the City of Portland, Maine in 2004 did foreclose on a Guilford property; that Waterville began foreclosure proceedings against Guilford; and that despite Guilford's payment of $113,000 in real estate taxes before the foreclosure deadline, Guilford still owed an additional $125,000 in real estate taxes for 2006 and the first quarter of 2007. *See Exhibit "C"*. In addition, STR routinely does not pay car hire (compensation to be paid by a user to an owner for use of a car) to other railroads, and as of July 1, 2006, there were nine (9) active cases against STR in this Court for said non-payment of amounts all substantially less than the judgment in this case. *See Exhibit "D"*. A recent Dun & Bradstreet report rates Guilford and STR as being highly likely to fail to make payments on time over the next twelve months. *See Exhibit "E"*.

Based on the foregoing, STR's ability to pay the judgment following appeal is not sufficiently guaranteed to warrant waiver of the supersedeas requirement. Moreover, if STR is as financially

---

[2] In 1983, STR was acquired by Guilford Rail Systems. In 1998, Guilford Rail Systems acquired Pan Am, and Guilford changed their name to PanAm Railways in March 2006.

secure as it assures the Court it is, its ability to obtain the bond will not be difficult. See *Cipes v. Mikasa, Inc.*, 404 F. Supp 2d 367 (D.C. Mass 2005).

STR's reliance on the case of *Fed. Prescriptions Serv., Inc v. Am Pharm Assoc.*, 636, F.2d 755 (U.S.C.A., D.C. 1980) is misplaced. In that case, a decision of the Court of Appeals for the District of Columbia, plaintiffs were issued a judgment in the amount of $102,000.00. Both parties appealed the verdict, and the defendant's motion for stay pending appeal and waiver of the requirement of a supersedeas bond was granted because defendant submitted financial statements demonstrating its continued ability to satisfy the judgment. The plaintiffs appealed the trial court's order. In affirming the trial court's order, the appeals court noted that F.R.Civ.P. 62.2(d) did not prohibit the district court from exercising sound discretion authorizing unsecured stays in cases it considers appropriate. The court concluded that the documented net worth of the judgment debtor was $4.8 million, about forty-seven (47) times the amount of the damage award, and that the judgment debtor was a long-time resident of the District of Columbia with no indication that it had any intent to leave. In light of these factors, the appeals court ruled that the district court did not abuse its discretion in granting a stay on appeal without requiring a supersedeas bond.

However, in the present case, the judgment is for a more substantial amount - $925,960.00, plus 4.90% interest. In light of the lack of evidence as to STR's good financial health, and the evidence that suggests that STR is highly unlikely to timely pay debts that are considerably less than Deitzel's judgment, STR should be required to post a supersedeas bond.

The present case is more similar to the *Cipes* case. In *Cipes*, a verdict of $665,000.00 was rendered against Mikasa. Under Local Rule 62.2, Mikasa would be permitted to post a bond in the amount of approximately $925,000.00 to stay execution of the judgment. Mikasa argued that the

5

supersedeas bond requirement should be waived because it would be able to satisfy the judgment following the appeal, citing evidence by way of a recent financial statement that it had a net worth of approximately $230 million. However, Cipes cited evidence of Mikasa's declining finances, including testimony from a former CFO of declining gross profits, net income and net worth, and an increase of operating losses. *404, F. Supp 2d at 369*. Further, the Dun & Bradstreet report indicated, *inter alia,* that Mikasa would be highly unlikely to make payments on time over the next twelve months. *404 F. Supp at 371*. Based on this evidence, the court ruled that Mikasa's ability to pay the judgment following appeal was not sufficiently guaranteed to warrant waiver of the supersedeas bond requirement, and if Mikasa was as financially secure as it assured the court it was, its ability to obtain the bond would not be difficult. *Id.* Consequently, the court denied Mikasa's motion to waive the bond requirement. *Id.*

Since the evidence presented in the case *sub judice* is similar to that presented in *Cipes*, Deitzel requests this court to reach a similar conclusion. In the alternative, Deitzel requests this Court to defer a decision pending discovery as to STR/Guilford/PanAm Railway's financial condition, including but not limited to the serving of interrogatories and document requests, and the deposition of the president of STR/Guilford/PanAm Railways, David A. Fink.

III.     CONCLUSION

    For all the foregoing reasons, plaintiff respectfully requests that defendant's Motion for Stay Pending Appeal and for Waiver of Supersedeas Bond be denied. In the alternative, plaintiff respectfully requests that this Court defer any decision on defendant's Motion pending discovery as to STR's financial condition pending.

                                   Respectfully submitted,
                                   **BARISH ♦ ROSENTHAL**

            By:    /s/ Rudolph V. DeGeorge, II
                    RUDOLPH V. DeGEORGE, II, ESQUIRE
                    Attorney for Plaintiff
                    Bell Atlantic Tower
                    1717 Arch Street, Suite 4020
                    Philadelphia, Pennsylvania 19103
                    215-923-8900/ fax 215-351-0593

                    DAVIDS & ASSOCIATES, P.C.

                    /s/Ronald M. Davids
                    Ronald M. Davids
                    40 Washington Street – Suite 20
                    Wellesley, MA  02481
                    (781) 416-5055
                    BBO No.: 115110

**CERTIFICATE OF SERVICE**

    I, Rudolph V. DeGeorge, II, Esquire, hereby certifies that a true and correct copy of Plaintiff's Response to Defendant, Springfield Terminal Railroad Company's Motion to Stay Pending Appeal and for Waiver of Supersedeas Bond, Pursuant to F.R.CIV. P. 62 via first class mail upon:

                  John J. O'Brien, Jr., Esquire
                  O'Brien & von Rosenvinge, P.C.
                  27 Mica Lane, Suite 202
                  Wellesley, MA  02481

                                     /s/ Rudolph V. DeGeorge, II
                                       RUDOLPH V. DEGEORGE, II, ESQUIRE